## No. 13,810.

RENE F. CLERC VS. MORGAN'S LOUISIANA AND TEXAS RAILROAD AND STEAMSHIP COMPANY.

### SYLLABUS.

1. While common carriers are not absolute insurers of their passengers, it is an implied condition of railroad companies with each passenger, that the latter shall not be put in jeopardy of life or limb by any fault—even the slightest of the servants of the company. The negligence of a common carrier includes its negligence in all the departments of its undertaking.

2. The passenger is not relieved of all obligation as to his own safety, but, unlike the carrier, he need not exercise the highest degree of care. He is bound to exercise only ordinary care and prudence to preserve himself from injury.

3. The standard by which to determine whether or not an adult passenger has failed to exercise the proper degree of care, is whether a person of ordinary prudence in the same situation, and having the knowledge possessed by the passenger would have done, or omitted to have done, the alleged negligent act. The passenger has the right to rely confidently on

the care and watchfulness of the carrier to make all things safe for his transportation, with its incidents.

4. A railroad company cannot be permitted to place a car on one of its tracks in the hands of parties who do not know or appreciate the danger of doing or not doing certain acts which it was the duty of the party having charge or control of the car, to know, and escape liability for his negligent acts on the ground that it was not under the control of its employees. It is responsible for the negligent acts of those in whose hands it permitted the car on its tracks to pass.

5. It is negligence on the part of a railroad company to place a freight car, with opening side doors, on a switch connecting with the main track, so near the junction that the door, when opened, would close the intervening space between the switch and the track. To leave open the door of a car so situated or to throw it open as a train is passing, is more than carelessness and passive negligence. It is an active violation of the company's contract, against which the passengers would have a right to anticipate full protection.

6. Where the arm of a passenger was projecting from the sill of a car window, and was injured by being struck by the open side door of a freight car of the defendant company, left at rest upon a switch connecting with the main track, and so near that the open door closed the interval between the switch and the track, it is a question to be determined from the evidence under all the circumstances of the case, whether this was negligence on the part of the passenger—barring recovery.

A PPEAL from the Civil District Court, Parish of Orleans.—
*King, J.*

*Dart & Kernan,* for Plaintiff, Appellee.

*Denegre, Blair & Denegre,* for Defendant, Appellant.

### STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. The plaintiff prayed for judgment against the defendant company for twenty-five thousand dollars, referring to it as Morgan's Louisiana & Texas Railroad Company.

After alleging that it operated a line of steam railroad for the transportation of passengers and that he had purchased a ticket from the company and paid his fare, he averred that he was on the 3rd of August, 1900, a passenger on car No. 318 of said company en route from New Orleans to Morgan City. That just after the train to which his car was attached had passed Gretna station, and while he was seated in the car, he was suddenly struck on the right arm by an object which he afterwards learned was the door and the iron bolt or

fastening thereof attached to a refrigerator or freight car also the property of defendant company or being used by it and in its charge and care, custody and control, and lying on an adjacent track of the defendant company in close proximity to the track over which petitioner's train was moving or being carried.

That said blow bruised, crushed and fractured petitioner's right arm, causing him great pain and suffering; that he was attended temporarily by fellow passengers; that the train was stopped and petitioner was removed from said car to the Charity Hospital in New Orleans, where, on the same day about noon, petitioner's said arm was amputated at the elbow—the said fracture and injury being such that amputation was necessary.

That petitioner thereby lost forever the use of his right arm, reducing materially his capacity for making a living, besides mutilating and disfiguring his body. That at the time of said occurrence petitioner was a merchant in New Orleans, a member of the firm of Clerc Bros. & Co. in which firm he occupied the position of a traveling salesman, receiving in addition to his salary a share in the profits of said business. That his connection with said firm grew out of and was maintained chiefly by reason of his capacity as a traveling salesman, which occupation requires activity and physical ability to take care of one's self especially in riding and driving in day and night through the country parishes of Louisiana, where much of petitioner's time was necessarily spent. That the loss of his right arm increases the cost or expenditure of traveling and had reduced his earning capacity.

That petitioner lost seventy days of time from his business by reason of his said injury, during which period he was unable to earn his salary and, on the contrary, was laid up, invalided and unable to work and enduring constant physical and mental suffering; that he incurred expenses for physicians and medicines, and that while he had not lost his employment his strength had been undermined, and his capacity to earn a living had been effected as his usefulness to his copartners or other employers had been materially reduced by the loss of his arm as aforesaid.

That defendant company was responsible to petitioner for his mutilation, pain and suffering, losses and injuries, because—

1st. Petitioner was without fault or carelessness and contributed in no way to said injury. That he was a passenger on the said car, in

charge of the said company, in a place which he was entitled to consider safe, and had no warning or caution of the impending accident. That petitioner was entitled to safe carriage and protection from injury from anything in, on, or near the defendant's track, in its custody and control, or operated by it, under its care or placed by it or permitted by it to be placed or to remain in a position where said thing could injure said defendant's passengers. That the car in which petitioner was seated and the car which caused the injury was the property of the defendant, or in its possession and operated and controlled by it; that the accident could not occur and would not have occurred but for the carelessness and gross negligence of the defendant or its servants, agents and employees, for whose acts it was responsible.

2nd. That the two cars in question were larger than usual and there was no room between the two tracks for said cars to pass each other, particularly if the said freight car had its door open or had anything projecting from the same. That the tracks at that point, namely the track on which petitioner's train was passing and the track upon which the freight car was lying, were constructed in violation of the rules of the company as to distance between centers of tracks and were, in any event, not placed sufficiently far from each other to provide against accidents of this kind.

3rd. That the freight car in question had been lying within the yard limits of said defendant company with its door open or unsecured in the position which caused the injury for some hours in full view of the defendant's employees and was seen by or should have been seen by said employees and by the engineer and employees in charge of the train; that it was gross negligence and carelessness on the part of said employees not to have seen said car or, having seen it, to have allowed it to remain in that position at a time when passenger trains were known to be approaching and passing, and it was gross negligence on the part of the engineer of the train to attempt to pass said obstruction under headway as he did.

That for the mutilation, dismemberment and disfigurement, his pain and sufferings, and his decreased ability to earn a living, petitioner assessed his damages at twenty-five thousand ($25,000) dollars aforesaid.

In view of the premises, petitioner prayed that Morgan's Louisiana & Texas Railroad Company be cited and after due proceedings had

that there be judgment in petitioner's favor condemning said defendant company to pay petitioner the full sum of twenty-five thousand ($25,000) dollars with legal interest from date of judgment, and for trial by jury and for costs and for all general and equitable relief.

The defendant, after stating that its real name was Morgan's Louisiana & Texas Railroad and Steamship Company, pleaded the general issue.

Further answering it specially denied that the accident referred to or intended to be referred to was due to any fault or negligence on its part or on the part of any of its officers, agents or employees, and it averred that said accident was contributed to by plaintiff's negligence in unnecessarily and carelessly exposing his person to injury by allowing his arm to protrude out of the window of the passenger coach in which he was riding.

## OPINION.

There is no dispute between the parties as to the fact that, at the time of the accident set out in plaintiff's petition, he was a passenger seated near a window, in one of the coaches of a train of cars belonging to and operated by the defendant company. That while so seated, and the train being in motion, he was struck upon the arm by some object which injured him to such an extent as to necessitate its amputation. That the object which struck the plaintiff was either the door or a projecting hasp or bolt attached to the same of one of the side doors of a freight car belonging to the defendant company which was at rest upon a switch track also belonging to the defendant company, which connected with the main track upon which the train was moving. That this freight car had been placed by defendant's employees upon this switch the evening before the accident, at the point which it occupied at the moment the accident occurred, and that point was so near to the main track, that when the door of the frieght car was wide open, with the hasp or bolt extended to its utmost limit, the hasp would strike the side of a passenger coach, as, in motion, it passed by. The defendant denies that the plaintiff was struck by the projection of the hasp or bolt of the door into the window of the passing passenger coach at the point where plaintiff was sitting. It concedes that the bolt struck the coach, but it contends that it did so at a point several inches below the sills of the row of passenger car windows, as was shown by a defined line upon that car showing its line of contact.

In the brief filed on its behalf it is said: "It is conclusively shown by the witnesses that it was not the handle bar or hasp which struck plaintiff. If any additional evidence on this point is desired it will be found in the evidence which the hasp itself recorded on the side of the passenger coach." Further on it is said: "Everything points to the conclusion that the door swung open or was shoved open as the train was passing, and that the hasp or bar folded back on its hinge and so projecting a very short distance beyond the door, came in contact with car No. 318, and made the scratch mark above described, while the outer edge or face of the heavy door passed near enough to the side of the coach to come in contact with plaintiff's arm, which must have projected out of the window." * * * The conclusion is . irresistible that the edge of the door struck plaintiff's hand. It passed within two or three inches of the side of the car and the blood stain on the door is just where contact with an arm resting on the sill, but extending out of the window, would take place." The motive of the defendant in insisting that it was the door and not the hasp which struck the plaintiff, was that the form of the door would prevent its projecting inside the window sill and would place the point at which the blow was inflicted, outside of the line of the side of the passenger coach. That plaintiff was struck either by the door or the hasp of the door of the freight car is beyond question.

The defendant denies that the person who threw open the door of the freight car was an employee of the company. He maintains that if any employee had thrown the door open, it would have been in violation of his duty and the rules of the company. He urges that the freight car was loaded with moss and consigned to one Hepting, and had been turned over to Hepting for the unloading of the moss and the company was not responsible for Hepting's acts.

It will be well to refer to the law governing generally this class of cases before making special application of it to the case immediately before us. We think it is very generally recognized that, for the safety of their passengers, common carriers are required to exercise the higest degree of care reasonably to be expected from human vigilance and foresight, in view of the mode and character of the conveyance adopted and consistent with the practical prosecution of their business.

While common carriers are not absolute insurers of passengers, yet as declared by this court in Black vs. Carrollton R. R. Company, 10 Ann. 38, "It is an implied condition of railroad companies with each

passenger, that the latter shall not be put in jeopardy of life, or limb, by any fault, even the slightest, of the servants of the company."

In Grand Rapids & I. R. Co. vs. Boyd, 65 Ind. 526, the court said: "A common carrier of passengers is not an insurer of the passengers' safety against all the accidents and vicissitudes of travel, but it is an insurer against all risks caused or increased by the negligence of the carrier where the passenger is not at fault. The negligence of a common carrier in carrying the passengers includes his negligence in all the departments of his undertaking, the condition of the road, the character of the machinery, the quality of the cars, the insufficiency of the equipments, the skill and conduct of the agents and employees, in everything indeed, necessary to the safety of the passenger when he himself is not at fault." While the carrier is held to very strict care, the passenger himself is not relieved of all obligation of taking care of his own safety, but, "unlike the carrier," he need not exercise the highest degree of care. He is bound to exercise only ordinary care and prudence to preserve himself from injury. Fetter's Carrier of Passenger," Sec. 128; Mackoy vs. Railway Co., 18 Ted. 236. *Smith vs. Railway Co.,* 32 Minn. 1; 18 N. W. 827, Keokuk North Line Packet Company vs. True, 88 Ills. 608; Boland vs. Railroad Co., 65 Cal. 626; 4 Pac. 672.

The standard by which to determine whether or not a normal adult passenger has failed to exercise the degree of care is, whether his conduct is that of a prudent, reasonable, man, in possession of his ordinary senses and capacities placed in his situation." (Fetter, Sec. 128, Sims vs. Railway Co., 27 S. C. 268; 3 S. E. 301. It has been held that "whether or not the act of a person is negligent, depends upon whether or not a person of" ordinary prudence "would have done or omitted to do the same thing." Galloway vs. Railway Company, 87 Iowa, 458-54, N. W. 447. The test of the liability of one to a charge of contributory negligence is whether a prudent person, in the same situation, and having the knowledge possessed by the one in question, would do the alleged negligent act. Texas & P. Ry. Co. vs. Best, 66 Tex. 116; 18 S. W. 224. See also Curtis vs. Railroad Co., 27 Wis. 158.

"The passenger on a railroad train has the right to confidently rely on the care and watchfulness of the carrier to make all things safe for his transportation with its necessary incidents. While passively submitting himself to the carrier's care during the journey    *    *    *

and he is not to be deemed guilty of negligence, unless knowledge of a defect or peril is thrust upon him and he then fails to use ordinary care to avoid injury." this right has to be exercised within reasonable limits. It stops where the situation is such that the exercise of the right in a particular case would relieve him from what, under the circumstances of that cause would have thrown upon him the obligation of taking, affirmatively, legal care of himself in the premises. In the case of Summers vs. Crescent City Railroad Co. (34 Ann. 145), this court, referring to the defendant, said: "As a carrier of passengers, it is elementary that defendant's duty was to exercise diligence, skill, care and foresight to carry them safely. (Penn. Co. vs. Roy, 102 U. S. 451.)

It was bound to know that its passengers, in common with those on other street railways, were in the habit of riding with their arms resting on the window sills and projecting outside of the cars; that under the usual conditions of construction of parallel tracks in the city, this practice was free from danger of collision with passing cars, on their respective tracks; that the width between its own tracks at this curve was exceptionally narrow; that the car No. 4 used by it was exceptionally wide; that such car in running over that curve was liable to meet another car; that in such meeting they would, under conditions perfectly probable, pass each other so closely as if not to collide to come very near touching; that in such event a passenger in either car occupying the position shown to be very commonly occupied, would inevitably be injured. Knowing these things, a reasonable care for the safety of others would have dictated the duty of using precautions to ovoid the danger." Quoting, the court said: "As well said by an able judge, 'When we are engaged in an act which the surrounding circumstances indicate may be dangerous to others, and when the event whose occurrence is necessary to make an act injurious, is one which we can readily see, may occur under the circumstances and unite with the act to commit the injury, we are culpable if we do not take all the care which prudent circumspection would suggest to avoid the injury.' Fairbanks vs. Kerr, 70 Penn. St. 86."

The court decreed the defendant guilty of "negligence," as defined by itself in its decision. It then proceeded to consider whether the plaintiff was guilty of *contributory negligence,* saying:

" The sole negligence charged is his act in sitting as he did with his arm resting on the window and his elbow projecting out of the car.

Applying the principles already enunciated to the facts stated, we are of the opinion that there is a complete want of causal connection between the act and the injury. * * * It seems to us manifest under the circumstances of this case that no ordinary circumstances or foresight would have suggested to the most cautious person situated as plaintiff was, the slightest probability of danger from the meeting of a car on a parallel track. Seeing a car approaching he would have been perfectly justified (according to all common experience) *in diverting his attention and resting in the perfect confidence* that it would pass without touching him."

If the car had jumped the track, and had thus collided with the exposed arm of plaintiff, a different question would be presented. *Quoad* such a contingency, the act of plaintiff might have been judicially negligent. A prudent man might well foresee the possibility of such an occurrence and might well be held to have taken upon himself the risk of such a peril. But, viewing the particular damage here suffered concretely, Mr. Wharton's question, "Was it in ordinary natural sequence from the negligence?" must be answered in the negative."

In Spencer vs. Railroad Co., 17 Wis. 787, the court said: "It is probably the habit of every person while riding in the cars to rest the arm upon the base of the window. If the window is open it is liable to extend slightly outside. This, we suppose, is a common habit. There is always more or less space between the outside of the car and any structure erected by the side of the track, and must necessarily be so to accommodate the motion of the train. Passengers know this and regulate their conduct accordingly. They do not suppose that the agents and managers of the road suffer obstacles to be so placed as to barely miss the car while passing. And it seems to us almost absurd to hold that in every case, and under all circumstances, if the party injured had his arm the smallest fraction of an inch beyond the outside surface, he was wanting in order and prudence."

Coming now to the case before the court, we are of the opinion that the defendant company did not comply, as a common carrier, with its duty to the passengers on its moving train, when it placed or allowed the loaded freight car, with its wide doors and bolts, to be placed as it was, on the switch connecting with the track, on which it was, and in permitting that car, after it had been placed where it was, to go into the possession of a person other than one of its own employees to be by him unloaded. It was unjustifiable in the company to place one of its

cars, occupying as dangerous a place, in the hands of an irresponsible party. So far from escaping liability by reason of the fact that the car was in the possession and under the control of Hepting, that very fact itself was an act of imprudence, carelessness and negligence. A railroad company cannot be permitted to place a car on one of its tracks in the hands of parties who do not know or appreciate the danger of doing or not doing certain acts, which it was the duty of the party having control or charge of the car to know, and escape liability for his negligent acts on the ground that the car was not under its control, and it is responsible for the faults of those into whose hands it permitted the car to pass. This freight car was on the switch so near the junction that its door when opened closed the intervening space between the switch and the main track. To open the door of a car so placed, when a passenger train is passing, is more than carelessness and passive negligence. It is a positive, active violation of the company contract. The defendant company could not, with impunity, throw a door open across the intervening space, taking the chance of its not hitting some one sitting in the passing car. On the other hand the passengers in the car had the right to assume that they would be protected from any injury to themselves from the operation of any force thrown actively against them by parties for whom the company would be responsible. In this case it is not claimed that the plaintiff threw his hand or arm out of the car, and in so doing struck some object on the outside.

On defendant's theory of the case, the car on which the plaintiff was a passenger, was moving towards the door and the door was moving towards the car at the time of the accident, while plaintiff himself was passive. We do not think that the plaintiff by any act of his estopped himself from recovering damages for the injury.

What did the plaintiff do which has cut him off from his action? The defendant says if it was guilty of negligence, so also was the plaintiff guilty of negligence. But is this true? At the utmost, the plaintiff inadvertently or forgetfully permitted his elbow to project somewhat beyond the outer edge of the sill. If in point of fact the arm was projected, it does not appear how far beyond the sill it was so projected, nor for how long a time nor from what cause. It can scarcely be claimed that a passenger on a train should be constantly on the alert and on guard at every moment of his trip, to see that his arm does not pass a hair's breadth beyond the outer line of the sill, that he should watch every movement of his body lest, perchance, in turning or stoop-

ing, his arm should pass a little beyond limits. Such requirement at his hands would be utterly unreasonable. That a passenger might be guilty of negligence on some particular occasion by projecting his arm beyond the outer line of the car, so as to bar recovery of damages received as the result of that act, is beyond question true, but this barring of the remedy would depend upon the facts and circumstances of the case. Inadvertence, inattention or forgetfulness are not, *per se,* "negligence." The time, the cause, the place, all the circumstances connected with the inadvertence, the forgetfulness, the inattention, are to be considered before they can be held to be of character such, as by reason of them, another person should be screened from liability and protected from the effects of an established *tort.*

Unless the act itself in respect to which inadvertence or forgetfulness or inattention is charged to have been committed is negligence, the inadvertence or forgetfulness cannot be negligence.

What is negligence? And what is contributory negligence? This court has itself, in the case of Summers in the 34th Annual, given a definition of the word. Several other definitions given will be found in Fetter's Carrier of Passengers, Section 3. The definition of this court referred to, is as follows: "Judicial negligence is the inadvertent omission to do something which it would be the legal duty of a prudent and reasonable man guided upon these considerations which ordinarily regulate the conduct of human affairs, to do, or the inadvertently doing something which it would be the legal duty of a prudent and reasonable man not to do, such act or omission being on the part of a responsible human being, and being such as in ordinary natural sequence immediately results in the injury complained of."

"This definition, though perhaps redundant, includes unequivocally all essentials and excludes acts not properly within the domain of negligence. It excludes offenses or intentional wrongs. It excludes mere moral duties. It excludes irresponsible persons, of whom various classes are mentioned by Mr. Wharton. And it excludes all acts or omissions which, though they may be negligent, with reference to certain relations or contingencies, have no causal connection with the injury complained of."

Assuming that the plaintiff did in point of fact project his arm to some extent beyond the window sill of the window at which he was seated, was his doing so, under the circumstances in which this was

done, and in view of the exact situation, "negligence"? We think not. The company's road is not a new one; it has been in operation for years; the situation of its tracks and the constructions along its lines are well known. No accident is shown or asserted to have occurred upon it by reason of any passenger having projected his arm beyond the window sill, and there certainly would have been accidents had that fact of itself been attendant with danger, as it is a matter of common knowledge that passengers are constantly doing this with no injurious results. The plaintiff had no reason to anticipate danger of injury to himself or to any one else by permitting his arm to pass beyond the sill. It is not pretended that there ever had been or was anything on the line of the road which would have made it at all dangerous for plaintiff's arm to have rested *precisely where it was, had not the special circumstances arisen from and out of which* this accident occurred. They would not have occurred but for defendant's sudden negligence, and the plaintiff had no reason to anticipate, pepare for and guard against such negligence. If plaintiff had had reason to anticipate that which happened, a very different case would have been presented. Defendant's counsel urges that injury in the Summers case was one in which a street railway and not a steam railroad was the defendant. It may be, and doubtless is true, that the legal situation in a case of this kind, may be varied by the fact that the company involved is a railroad instead of a railway company. If there be a difference, we will give heed to, and act upon it when it is shown in any particular case, but we cannot arbitrarily declare that, as a matter of law, passengers in a railroad car are prohibited from projecting, to the least extent, their arms beyond the side of the coaches, while the fact is open to enquiry in the case of a street railway company. In the Summers case, the court said "that in determining what constitutes negligence, precisely the same rules must be applied to the acts of defendant charged with negligence as to the acts of plaintiff charged with contributory negligence."

We have repeatedly relieved defendants from the charge of negligence where the act done was one which the party committing it had no reasonable ground to know or believe or could not reasonably be held to foresee in the light of attending circumstances, and which he did not know or have reasonable grounds to know would carry with it injury as its natural and probable sequence.

Mere temporary inadvertence on the part of a plaintiff, under such conditions and in reference to a matter of that kind, would not be contributory negligence, barring recovery for damages. We deal with this matter not from the standpoint of comparative negligence, but from that of absence of negligence in its legal sense on the part of the plaintiff.

If the arm of the plaintiff projected beyond the window sill, as defendant says it did, it does not show how far it projected, or for how long a time it did so. It may have been there for only a second of time, in his act of moving or turning. In Patton vs. Pickles, 50 Ann. 864, referring to the relations between a common carrier and its passengers, we said "the contract between the parties is one which from time immemorial has imposed upon the obligor exceptionally severe obligations. Safe carriage is not merely an incident of the contract, but it is its very direct object." We do not think that a railroad company can, by its own act or that of one for whose acts it is responsible itself, injure one of its passengers, and then throw upon him the obligation of disproving contributory negligence. In such a case the carrier must establish affirmatively the acts on the part of the passenger which it claims bring him under the operation of the rule of contributory negligence, barring him from recovery of damages. (Kennon vs. Vicksburg, Shreveport and Pacific R. R. Co., 51 Ann. 1604.) The views herein expressed are substantially held in Summers vs. Crescent City R. R. Co.; Lampkin vs. McCormick, 105 La. 417, and Kird vs. The New Orleans and North Western R. R. Co., 105 La. 226. See Chaffee vs. Railroad Co., 104 Mass.; Hempenstall vs. Railroad Co., 82 Hun. 285; 31 N. Y. Supp. 479; Archer vs. Railroad Co., 106 N. Y. 589; 13 N. E. 318; Fetter's Carrier of Passengers, Sections 130, 131 and 127.

We think the judgment is far too large an amount. It is hereby reduced and amended to seventy-five hundred dollars, and, as so amended and reduced, it is hereby affirmed.