62 So.2d 541 (1952)
MIRE et al.
v.
LAFOURCHE PARISH SCHOOL BOARD et al.
No. 3614.
Court of Appeal of Louisiana, First Circuit.
December 18, 1952.
Rehearing Denied January 26, 1953.
Writ of Certiorari Denied February 16, 1953.
*542 Blanchard & Blanchard, Donaldsonville, for appellant.
St. Clair Adams & Son, New Orleans, for appellee.
DORÉ, Judge.
This suit by Felix Mire, individually and on behalf of his minor daughter, Lois Mire, was brought to recover damages resulting from accidental injury suffered by Lois Mire on December 20, 1948. Lois was then seven years old and a pupil in the public schools of Lafourche Parish. In the afternoon of that day she was transported from school to her home in a school bus operated by J. Ulysse Rivere, the driver regularly employed by the School Board. When the bus reached a point on the road opposite the Mire home, about 4:30 P. M., the bus was stopped on its right side of the road, which was opposite the side on which plaintiff's home is situated. As Lois was alighting she asked to be "crossed", which was the term the children used when asking the driver's aid in crossing the road safely. The driver delegated to Kenneth Folse, a 15-year old high school boy, who was also a passenger on the bus, the job of seeing Lois safely across the road. Kenneth got out of the bus along with Lois, walked to the front of the bus, and was in the act of looking down the road for traffic and holding out a red flag when the child Lois stepped into the road. Simultaneously a car driven by Morrisson Chouest came from the rear of the bus at a fast rate of speed, passed the bus without slowing down, and struck Lois and carried her some 250 or 300 feet down the road before coming to a stop.
Plaintiff brought suit against the bus driver, the School Board, Morrisson Chouest, and Houston Fire & Casualty Company, the latter allegedly being the insurer *543 carrying liability insurance covering the operations of the school bus. The School Board, bus driver, and the insurance company all filed exceptions of no right or cause of action, which were sustained as to the School Board and the insurer. When the exceptions were heard the insurer introduced a copy of the policy it had written for the School Board which showed coverage only for Owners', Landlords' and Tenants' Bodily Injury and Property Damage arising from certain school buildings but no coverage on the school bus or other vehicles. The suit against the insurer was therefore properly dismissed. The dismissal as to the School Board was also proper according to the established jurisprudence of this state. See Whitfield v. East Baton Rouge Parish School Board, La.App., 23 So.2d 708, and cases cited therein, holding that a school district, being merely an agency of the state, is not liable for torts committed by its trustees or employees in the absence of statute imposing such liability.
The case was tried with Rivere, the bus operator, and Chouest, the driver of the car, as defendants. Chouest admitted that subsequent to the accident he had pleaded guilty to a charge, arising out of the accident, of driving a car while under the influence of alcohol. He also admitted that he had seen the school bus stopped beside the road, with one or two other cars stopped behind it, and that he passed the bus without slowing down; but he claimed that because he does not know how to read he did not recognize the bus as a school bus but thought it was a grocery truck. If we assume he was telling the truth in saying he could not read the wording on the rear of the school bus, nevertheless we think he was negligent in passing up three vehicles stopped by the side of the road with people seated in each of of them, particularly when one of them had all the physical characteristics of a school bus. The trial judge found Chouest guilty of negligence and rendered judgment against him. We find no error therein.
The trial judge declared that he found no negligence on the part of Rivere, the bus operator, and dismissed the suit as to him. With this, however, we cannot agree, for several reasons.
In the first place Rivere did not perform the duties ordinarily found to be incumbent on public carriers. In 10 C.J., Carriers, § 1294, p. 854, 13 C.J.S., Carriers, § 676 is found the statement that although a carrier does not insure the safety of his passengers, the general rule may be stated that the carrier is bound to exercise as high a degree of care, skill, and diligence in receiving, carrying and discharging a passenger as the circumstances of the case will permit. And in the same volume at page 856, Sec. 1296, we read:
"In a great majority of the cases it is stated that the carrier * * * must exercise the utmost care and diligence, or the highest degree of care, prudence, and foresight for the passenger's safety; and by another form of expression, the highest degree of care which would be used by a person of great prudence in view of the nature and the risks of the business under the same or similar circumstances. Again it has been stated that the carrier is required to do all that human sagacity and foresight can do under the circumstances, in view of the character and mode of conveyance adopted, to prevent injury to passengers, the carrier being held liable for the slightest negligence with reference to the exercise of such care * * *." 13 C.J.S., Carriers, § 678, p. 1257.
The rule there cited has been approved and followed in a number of Louisiana cases. See Hopkins v. N. O. Railway & Light Co., 150 La. 61, 90 So. 512, 19 A.L.R. 1362; Matteson v. Teche Greyhound Lines, La.App., 178 So. 272; Wallace v. Shreveport Railways Co., La.App., 175 So. 86; Hart v. Gulf, Mobile & Northern R. Co., La.App., 167 So. 166; Baptiste v. N. O. Public Service, La.App., 161 So. 783; Shally v. N. O. Public Service, Etc., 1 La.App 770, affirmed, 159 La. 519, 105 So. 606.
While no Louisiana case has been pointed out to us, nor do we know of any, where the *544 court considered the degree of care required of a school bus operator as distinguished from the care required of carriers generally, there is a decision from Tennessee where we think the court correctly interpreted the school bus driver's duty. The Court said, in Cartwright v. Graves, 182 Tenn. 114, 184 S.W.2d 373, that a school bus driver's failure to restrain or warn a child struck by an oncoming truck after she had alighted from the bus was at least one proximate cause of the accident, so that the driver was not relieved of liability on the theory of an intervening cause.
In the second place, Rivere had a special duty imposed on him by the terms of his contract with the Lafourche Parish School Board. He had been driving a school bus for several years, having entered into a bus operator's written contract with the school board on August 14, 1940. Article 9 of the contract set forth 19 paragraphs or regulations governing the operator's duties and responsibilities. Two of these regulations were as follows:
10. Bus drivers who load or unload children on a main highway shall signal that a stop is to be made. After the bus comes to a standstill, the driver shall get out of the bus, look both ways for approaching cars, and shall not permit children to get on or off the bus until it is safe for them to do so. (Italics ours.)
13. All school busses shall be driven by the person in whose name the contract is issued. The operator shall name in his contract a substitute, acceptable to the Board or Superintendent of Schools. The substitute shall only serve in the event of the operator's sickness, or when operator has received permission from the Board or Superintendent of Schools to be absent from regular duty.
It is our opinion that under regulation 10 above, it was the duty of the bus driver to get out of the bus and so remain out and ascertain and see that it was safe for the children to cross the highway, or, in other words, to see that the children safely crossed the highway.
In this case Rivere did not get out of the bus to give aid to any of his young passengers; in fact, he testified that he did not even know that such a requirement was in his contract because he had never read it and that it was the custom for him and other drivers to never get out of their busses to give assistance to the children. The practice of giving assistance to the children was only begun after plaintiff's child was injured. Rivere would have it appear that the small children were as safe in the hands of Kenneth Folse, the 15-year old passenger who was somewhat of a baseball and football player, as they would have been had he, Rivere, personally gotten out to look after their safety. This may of course have been true; a driver who had never read his contract could probably not be expected to be a safe custodian for small children. But, nevertheless, Rivere was the one who had contracted to transport and look after the children; and he had no authority to delegate his duties to anyone else except with the approval of the School Board or the Superintendent of Schools. In not getting out and looking to see if the road was clear before his 7-year old passenger was allowed to start across the road, in violation of his contract, he was negligent; and in delegating part of his duty to a minor without authority he was negligent. The accident suffered by Lois Mire was just the kind of accident that the requirements in defendant's contract were designed to prevent.
In the third place Rivere was negligent in not seeing what he should have seen. He testified that he did not consider it necessary for him to get out of the bus to look for traffic coming from the rear for the bus had somewhat recently been equipped with a new and specially designed rear-view mirror which enabled him to see toward the rear as well as from the inside as he could if he had gotten out. If this statement was correct then he apparently was not using the facilities at his disposal, for he testified elsewhere that he did not see the car driven by Chouest until it was in the act of passing the bus. The rule that one is negligent in not seeing what he could and should have seen is too well established to require the citation of authorities.
*545 Lois Mire suffered a fractured thigh, as well as numerous bruises, contusions and general shock. She spent 23 days in the hospital and 5 weeks in a cast, and limped for 2 months after beginning to walk again. Otherwise recovery has apparently been complete. In the judgment against Chouest the trial judge awarded $2,500 for her injuries and suffering and $658.30 to her father individually for his expenses. Those amounts are satisfactory.
The judgment is reversed as to defendant J. Ulysse Rivere, and judgment is now rendered against Rivere and Morrisson Chouest, jointly and in solido, in the amounts just named, together with legal interest from judicial demand until paid, and all costs.