116 So.2d 307 (1959)
Jack Aaron ADAMS et al., Plaintiffs-Appellees-Appellants,
v.
GREAT AMERICAN INDEMNITY COMPANY, Defendant-Appellant.
No. 9083.
Court of Appeal of Louisiana, Second Circuit.
November 25, 1959.
Rehearing Denied December 22, 1959.
Certiorari Denied February 15, 1960.
*308 Lloyd F. Love, Ferriday, for plaintiffs-appellees-appellants.
Dale, Richardson & Dale, Nathan M. Calhoun, Vidalia, for defendant-appellant.
GLADNEY, Judge.
This suit in tort was instituted by Jack Aaron Adams and Clara Rabb Adams, seeking damages for the death of their eleven year old son, Theo Rabb Adams, and for serious injuries to their eight year old daughter, Jacqueline Ann Adams. The defendant, Great American Indemnity Company, is liability insurer of Clerel White, a school bus driver. The action arises from an accident which occurred on U. S. Highway No. 84 about two miles west of Ferriday, in Concordia Parish, on the afternoon of October 21, 1950, when the two Adams children, after alighting from the bus and crossing the paved portion of the highway were struck by an automobile driven by Randall Brian, who, while intoxicated, was traveling at a high rate of speed. Following a trial wherein, save for one exception, the evidence adduced was mostly undisputed, the trial court awarded judgment in favor of plaintiffs, and both defendant and plaintiffs have appealed.
The plaintiffs were on October 21, 1955, a young married couple living on the south side of U. S. Highway No. 84, about two miles west of the city limits of Ferriday. Their above named children were normal, healthy children and between parents and children there had always been a close family relationship. The children attended the Ferriday elementary school and were transported to and from the school in a school bus owned and operated by Clerel White under a contract with the Concordia Parish School Board. The vehicle was a standard school bus as used regularly in the State of Louisiana, and was equipped with the usual safety equipment of school buses, including a large rearview mirror of such size and so situated the driver could observe fully the road to the rear of the bus.
On the afternoon of the date aforesaid, the two children were being transported in the school bus by its operator, Clerel White, from the school to their home. When the bus arrived at the Adams home it was brought to a stop in the north or westbound traffic lane, at a point where its front bumper was approximately opposite the driveway of the Adams residence. While the children were proceeding from the bus to the Adams residence which required them to cross over the south lane for eastbound traffic, an automobile driven by Randall Brian traveling westerly at a high rate of speed came from behind the school bus and struck the children after they had crossed the paved portion of the highway. Theo Rabb Adams died shortly after being taken to the hospital and Jacqueline Ann Adams was hospitalized for twenty-two days. Her injuries included a fracture of *309 the left femur and fractures of both bones of the right lower leg, which required surgery on both legs. At the time of trial she had two prominent scars on her legs, one on the left thigh about seven inches long and one on the right lower leg about two inches long.
The accident occurred about 3:20 o'clock P.M. with the weather clear and the concrete road surface dry. U. S. Highway No. 84 at that point has a width of pavement of twenty feet, and an additional width of twelve feet is added by shoulders. At the scene of the accident the highway to the rear of the bus is straight for approximately.4 of a mile or about 2,000 feet. The official report made by Trooper M. E. Barnette of the Louisiana State Police, shows that as Brian's vehicle approached the scene of the accident, at which time the school bus was stopped, there were four vehicles which had stopped upon signal of the school bus driver. One of these was a truck driven by C. W. Diffey, which was traveling east and had come to a stop in front of the school bus in the south lane. The other three vehicles were stopped behind the school bus and these were traveling west. These were a pick-up truck loaded with lumber operated by Rev. Ralph Hatten in which Willie Kelley was a passenger, an automobile driven by Mrs. Connie H. Storey in which her husband, L. A. Storey, was a passenger, and a third vehicle, the identity of which has never been learned.
Eyewitnesses to the accident were Clerel White, Sr. and his son, Clerel White, Jr., Mr. and Mrs. L. A. Storey, Rev. Ralph Hatten, Willie Kelley, C. W. Diffey and Randall Brian.
The report of Trooper Barnett reflects the following situation:
"Vehicle #2 was stopped in west bound traffic lane discharging children from the school bus. The driver of the bus had a flagman out in the road with a red flag for the children to cross the highway. There were three vehicles behind the bus, which had stopped and a truck and semi-trailer had stopped in the east bound lane for the school bus to discharge the children. The flagman was in the road and the children had crossed over the highway and were on the driveway going into the yard of Jack Adams residence when vehicle #1 came from behind the school bus disregarding the flagman and hitting the two children. Vehicle #1 passed over the body of the boy and throwing the girl about 20 feet. There were no visible signs where vehicle #1 had applied brakes. After hitting the two children the vehicle traveled 217' before it came to a stop. When the vehicle stopped, the driver Randall Brian threw a pint bottle of whiskey into the ditch of which about half of the whiskey was gone. While questioning Randall the subject stated he was going 70 MPH when he saw the children and applied his brakes. When asked about his drinking, he stated what was gone out of the bottle, he had drank himself and he also stated that he had too much to be driving * * *."
Evidence was adduced by counsel for both litigants to determine the time required for a child to cross the highway. Defendant's tests disclosed the average time required for several different children to step from the school bus and cross the highway was 5.68 seconds. The tests conducted by plaintiffs' counsel were conducted with a ten year old boy and showed the time required by this child to cross the highway varied from 1.8 seconds when the child ran across the highway to 4.1 seconds when he crossed the highway walking. This evidence was tendered by the attorney for plaintiffs for the purpose of evidencing that the Brian automobile could not have been more than eight hundred feet from the school bus when the Adams children were instructed to cross the highway.
By authority of LSA-R.S. 17:164 the State Department of Education is authorized *310 to adopt rules and regulations governing the operation of school buses used in transporting students to and from schools. Pursuant to this authority certain instructions were set forth in Department Bulletin Number 785, which provides in part:
"In discharging pupils from the bus, who must cross the highway, the responsibility of safe crossing rests with the driver. However, it is recommended that a school bus safety patrolman be used to assist the driver in crossing the pupils. Pupils should be instructed by the driver to assemble at a point about 6 to 8 feet in front of the bus, but on the shoulder of the highway; the patrolman should take his position about five feet in front of the left fender of the bus, and extend a red flag into the middle of the roadway. When the bus driver has satisfied himself that it is safe for the pupils to cross, he should signal them to cross. As soon as the pupils are safely across the traveled part of the highway and are out of danger, the patrolman should re-enter the bus and the driver should close the door and instruct those pupils handling the flags in the bus, to withdraw them. He should then signal traffic to move, and should put his bus into motion without delay."
The contract between the Concordia Parish School Board and Clerel White was verbal, but subject to the rules and regulations of Bulletin Number 785 which also require a school bus driver to "see that pupils are protected from passing automobiles, trucks and other vehicles at such times when they are getting into or off of the bus."
In his written reasons for judgment the trial judge made this comment:
"It appears that the method followed in discharging the children where they must cross the highway in order to reach their homes, is that after all the warning signals are out and the bus has come to a stop, the front side door is opened and the flagman or flag boy (in this case, the bus operator's son, age 12 years) alights from the bus and crosses in front of the bus to the passing lane (here the south lane of the highway) and there with his flag in hand he observes the traffic in both directions, the bus operator remains in his seat where he can observe the traffic in front of him and through his rear view mirror can observe the traffic that is following. Now after these traffic observations and it appears that the children can cross the highway with safety, the children are signalled to cross over. It appears that this routine was followed here. However, in this instance, while these children were only partly over the highway, this Randall Brian, driving at a rapid rate of speed sought to pass the bus and in so doing his automobile struck these two children." (Emphasis supplied.)
Continuing, the judge said:
"From the record it appears and is so testified by the operator of the bus, that there was nothing to obscure his vision through his rear view mirror for a distance of some two thousand feet and nothing to obscure the vision of the flag boy of the following traffic for the same distance. It appears to the court that the bus operator and the flag boy should have seen what they could have seen."
His holding, therefore, was that Clerel White and his son failed in their duty to properly observe the rapid approach of Brian while the Adams children were only partly over the highway.
The argument of plaintiffs' counsel embraces several premises which arethat the responsibility of safe crossing of the highway by the children was imposed upon Clerel White, that this responsibility imposed a duty of extraordinary care, that he *311 could and should have seen the Brian automobile in his rearview mirror before the Adams children started to cross or in time to warn them, and that since he did not see what he could and should have seen, he negligently breached his duty as a school bus driver. On the other hand, the argument presented in behalf of defendant-appellant asserts: no danger was apparent at the time the children were instructed to proceed across the south side of the highway, the children had completely crossed when the Brian car left the traveled portion of the highway, that at that time the responsibility and liability of the school bus driver had been discharged, and, finally, pleading alternatively, appellants have filed a special plea of contributory negligence, predicated on charges the eleven year old boy was guilty of contributory negligence.
This, a tort action, is grounded upon LSA-C.C. art. 2315, which renders a person liable for fault. It, in part states:
"Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it * * *."
Not every such wrongful act is compensable. It is required in order to recover for negligence that the fault be a proximate cause of the damage inflicted. The general rule is thus stated:
"The rule which has been stated and applied more often than any other test of proximate cause is that which determines an injury to be the proximate result of negligence only where the injury is the natural and probable consequence of the wrongful act or omission. It is not enough to prove that the accident is the natural consequence of the negligence." 38 Am.Jur. Negligence, § 57.
An appropriate definition of proximate cause is one given by the Supreme Court of Mississippi, in Mississippi City Lines v. Bullock, 1943, 194 Miss. 630, 13 So.2d 34, 36, 145 A.L.R. 1199, which reads:
"Although one may be negligent, yet if another, acting independently and voluntarily, puts in motion another and intervening cause which efficiently thence leads in unbroken sequence to the injury, the latter is the proximate cause and the original negligence is relegated to the position of a remote and, therefore, a non-actionable cause. Negligence which merely furnishes the condition or occasion upon which injuries are received, does not put in motion the agency by or through which the injuries are inflicted, is not the proximate cause thereof. The question is, did the act constitute a succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the alleged wrong and the injury? 38 Am.Jur., p. 702; Thompson v. Mississippi Central Railroad Company, 175 Miss. 547, 554, 166 So. 353; And so say all the authorities, among which, as a striking illustration, is Bufkin v. Louisville & N. R. Co., 161 Miss. 594, 137 So. 517."
Our courts have consistently adhered to this rule, thus our brothers of the First Circuit Court of Appeal stated the rule in Picou v. J. B. Luke's Sons, La.App.1942, 11 So.2d 38, 41, to be:
"In order to recover damages for injuries sustained through the alleged negligence of another, the negligence and connection between the negligence and injuries must be shown by reasonable certainty, or, in other words, there must be a causal connection between the negligence and injury, and also that connection must be by a natural and unbroken sequence without intervening efficient causes. Therefore, if, in the sequence of events between the original negligence and the final result of the accident, an entirely independent *312 and unrelated cause intervenes and is, of itself, sufficient to stand as the cause of the accident, then the second cause is ordinarily regarded as the proximate cause and the other the remote cause. See Transportation Mutual Insurance Company v. Southern Scrap Material Company, 181 La. 1028, 160 So. 800; Cavaretta v. Universal Film Exchanges, La.App., 182 So. 135; Atchison, T. & S. F. R. Company v. Calhoun, 213 U.S. 1, 29 S.Ct. 321, 53 L.Ed. 671."
Likewise the Orleans Circuit Court of Appeal commented in Kendall v. New Orleans Public Service, Inc., La.App.1950, 45 So.2d 541, 543:
"If the injury to the plaintiff was not likely to result from the accident, and was not one which the defendant could have reasonably foreseen in the light of the attending circumstances, then the accident was not the proximate cause * * *."
Recently this court said in Kern v. Bumpas, La.App.1958, 102 So.2d 263, 265:
"Our jurisprudence requires of the complainant that he demonstrate that the act of negligence charged be the proximate cause of the injury. This condition is met by establishing a causal connection by a natural and unbroken sequence without intervening efficient causes between the negligence and the injury, and if, in the sequence of events between the original negligence and the injury, an entirely independent cause intervenes and is itself sufficient to stand as the cause of the accident, the second cause is the `proximate cause', and the other the `remote cause', of the accident. Picou v. J. B. Luke's Sons, La.App.1942, 11 So.2d 38, affirmed 1943, 204 La. 881, 16 So.2d 466; Frazier v. Ayres, La.App.1945, 20 So.2d 754; Kendall v. New Orleans Public Service, La.App.1950, 45 So.2d 541."
From the foregoing enunciation of legal principals, in order to determine if an act of negligence may be compensable a court should necessarily find a causal connection by a natural and unbroken sequence with no intervening efficient cause between the original act of negligence and the resulting injury.
In the instant case defendant's insured was the owner and operator of a school bus and as such falls in the category of public or common carriers, upon which rests a more onerous duty of care than is imposed upon an ordinary motorist. This court in commenting thereon, said in Coleman v. Continental Southern Lines, Inc., La.App.1958, 107 So.2d 69, 71:
"Public carriers are held to the exercise of the highest degree of care, and when an accident occurs which results in injury to a passenger, the burden of proof is upon the carrier to show freedom from fault. (Authorities cited.)
* * * * * *
"Under the rule of `highest degree of care' the commission of any act of negligence which contributes to accidental injury to a passenger, or the omission of any act of prudence, care or caution which might have resulted in avoiding the infliction of injury upon a passenger subjects the carrier to liability in damages." (Authorities cited.)
The duty so imposed by the courts requires common or public carriers to convincingly demonstrate that injury to one of their passengers is not due to the negligence of a servant.
Counsel for plaintiffs asserts the degree of care required of Clerel White in the instant case was identical with that of the school bus driver in Mire v. Lafourche Parish School Board, La.App., 1952, 62 So.2d 541, 544, wherein the driver was *313 found negligent for injuries to a school child after the child had left the bus and was engaged in crossing the highway. We find ourselves in disagreement with counsel. In the Mire case the little girl, seven years of age, was permitted to get off the school bus and instead of the driver himself getting out of the bus, he delegated his duty to a fifteen year old high-school boy. The boy walked around the bus and held out a red flag as the little girl stepped into the road and was struck by a passing automobile. In the contract between the bus driver Rivere and the Lafourche Parish School Board there were two special regulations imposed upon him. One of these specifically required the driver to get out of the bus, look for approaching cars and not to permit children to get on or off the bus until it was safe for them to do so. The other regulation did not allow the driver to delegate his duties to another except by express permission of the Board or the Superintendent of Schools. Rivere breached both of the above regulations. In finding the driver failed to perform these special duties, the court said:
"In this case Rivere did not get out of the bus to give aid to any of his young passengers; in fact, he testified that he did not know that such a requirement was in his contract because he had never read it and that it was the custom for him and other drivers to never get out of their busses to give assistance to the children. The practice of giving assistance to the children was only begun after plaintiff's child was injured. Rivere would have it appear that the small children were as safe in the hands of Kenneth Folse, the 15-year old passenger who was somewhat of a baseball and football player, as they would have been had he, Rivere, personally gotten out to look after their safety. This may of course have been true; a driver who had never read his contract could probably not be expected to be a safe custodian for small children. But, nevertheless, Rivere was the one who had contracted to transport and look after the children; and he had no authority to delegate his duties to anyone else except with the approval of the School Board or the Superintendent of Schools. In not getting out and looking to see if the road was clear before his 7-year old passenger was allowed to start across the road, in violation of his contract, he was negligent; and in delegating part of his duty to a minor without authority he was negligent. The accident suffered by Lois Mire was just the kind of accident that the requirements in defendant's contract were designed to prevent."
And in addition to finding Rivere negligent for the reasons above set forth, Rivere was also held to be negligent in not availing himself of the use of a specially designed rearview mirror which enabled him to see toward the rear as well from the inside as he could if he had gotten out. The special duties imposed upon Rivere were not required of Clerel White. Neither the contract nor any instruction prescribed that White get out of the bus, but to the contrary, he was expressly instructed to use safety patrolmen in assisting in the crossing of pupils. Certainly, therefore, Clerel White was not careless or negligent in the performance of the directives given to him by the State Department of Education and the Concordia Parish School Board. Furthermore, the trial judge exonerated White of any fault in this respect.
In the resolution of the instant case by the district court, the negligence of the bus driver was predicated principally, if not entirely, upon a finding that Clerel White failed to properly make use of the special rearview mirror with which the bus was equipped. The implications of this finding are two-fold: If White had timely looked in his rearview mirror he could and *314 would have observed the danger from the approaching Brian vehicle and could have avoided the tragic accident; and, secondly, the Adams children at the time they were struck were within a zone of danger for which the driver was still responsible for their safety.
There appears in the record a general stipulation that each of several school bus drivers, including Clerel White, Sr., would testify: "The rearview mirror on my bus is of sufficient size and so situated that I can see the entire highway to the rear of my bus." The stipulated testimony is not otherwise explained or qualified, but manifestly, we think, a school bus driver can not see the entire highway to the rear of his bus if his view is obstructed by other vehicles. As we understand the stipulation it means that the mirror reflects the highway to the rear of the bus only to the extent there is no interference with the vision of the driver. The testimony of Clerel White with reference to his observance to the rear of his bus is:
"* * * At the stop where the accident occurred I stopped my bus headed west with all wheels on the pavement in the west bound traffic lane. At this particular time the red flag and stop sign were both out before the bus came to a full stop. I looked both to the front and rear and saw that the traffic was stopped before I opened the door of the bus. I noticed a heavy transport truck stop ahead toward me from the west. I also noticed that there were two or three vehicles behind me before I opened the door of the bus. * * *" (Emphasis supplied).
* * * * *
"* * * I watched my son and the two Adams children as they got off the bus and observed that the truck in front of the bus and the cars behind the bus had stopped." (Emphasis supplied)
* * * * * *
"* * * I first saw the Brian car, the car which hit the children, when it came from behind the line of cars stopped behind me. I was looking in my rear view side mirror when the Brian car came into the east bound traffic lane." (Emphasis supplied).
The testimony of the driver, therefore, is that he looked to the rear before he opened the door, again as the children got off of the bus, and still again when the Brian car came into view from behind the three vehicles stopped in the rear of the bus. The evidence preponderates that the Brian car did, in fact, come from behind the stopped vehicles before striking the Adams children. This fact was established by the testimony of L. A. Storey and Randall Brian.
Of further importance in determining if White was negligent in not timely observing the approach of the Brian car is the speed of the latter vehicle. Brian himself admitted to a speed of seventy miles per hour. Other witnesses estimated it was from seventy to ninety miles per hour. State Patrolman Barnette, testified he found no skid marks nor tire marks on the pavement and that after striking the children, the Brian car traveled over two hundred feet before coming to rest. These facts are not seriously disputed. However, counsel for plaintiffs urge that the school bus driver, Clerel White, Sr., and the flag boy, his son, were negligent in their failure to see the Brian automobile in time to restrain the Adams children from proceeding into its path, and that this omission was the direct and proximate cause of the accident. Counsel points out that if it be assumed the Brian automobile was traveling at the rate of ninety miles per hour, or at a rate of one hundred thirty-two feet per second, because of the straightness of the highway and the existing clear weather, it would have been in sight over a distance of two thousand feet for a time interval of 15.15 seconds. It is argued also that according to the time required for the Adams children to cross the *315 south lane of the highway as calculated by defendant's witnesses, such crossing would have required 5.68 seconds. Thus, counsel reasons that when the children attempted to cross said highway, the Brian vehicle was but seven hundred fifty feet behind the school bus and should have been observed by White. At this point we observe that a car with a speed of ninety miles per hour requires with reaction time 5.58 seconds under excellent conditions to stop within a distance of 417.6 feet.
The argument to be effective must be predicated on the established facts. Clerel White, Sr., Clerel White, Jr., Willie Kelley, Randall Brian, Rev. Ralph Hatten and C. W. Diffey, testified the children were a safe distance away from the traveled portion of the road at the time they were struck and were some two or three paces south of the paved portion of the highway. This fact is also reflected in the report of the State Trooper M. E. Barnette. Actually, it appears the children were well into the driveway going into the yard of their father's residence when they were struck by the Brian vehicle. At that time the flag boy, Clerel White, Jr., was turning to go back into the school bus.
Conceding, arguendo, Brian was approaching on the straight and level highway at a dangerously excessive rate of speed, and that the bus driver could have observed the Brian vehicle at a distance limited only by an absence of opportunity for clear vision, the query arises as to what distance the Brian car as a potential source of danger should have been recognized. In finding an answer, two factors must receive consideration. Proper observation must disclose the presence of danger and that the approaching motorist is not likely to control his vehicle and operate it safely during the time available. These factors weigh heavily in favor of White for the evidence shows he was diligent in making repeated observations to the rear, and, in our opinion, could not have recognized the danger any sooner. Furthermore, had White been able to see the approach of Brian some one thousand feet or more away, the speed of the Brian car was not a factor of importance until it reached the point where it was apparent its driver could or would not so control his vehicle and avoid injury. Clearly, we think, while the Brian automobile was any distance beyond five hundred feet from the school bus, White had every right to assume Brian was traveling at a lawful rate of speed, and that he was in possession of his mental faculties and, therefore, would make proper observation of traffic and so control his automobile as not to cause injury. Blashfield Cyclopedia of Automobile Law and Practice, Per.Ed., Vol. 2, § 1049; White v. Neff, La.App.1942, 11 So.2d 289, 290; McDaniel v. Walker, La.App.1959, 111 So.2d 208. When the Adams children commenced their crossing of the highway, Brian was certainly more than five hundred feet away and danger did not manifest itself until after Brian had continued without reduction of speed behind the vehicles to the rear of the school bus and turned into the south lane of traffic. When this turn was made we are of the opinion that the Brian vehicle was less than three hundred feet distant from the children, who were at that time well into the process of crossing the highway.
It is our appreciation of the evidence that neither Clerel White, Sr. nor his son was remiss as to observance of the traffic approaching the school bus. It would impose an impossible burden upon White to foresee that the driver of a car as distant from the school bus as was the Brian car when the Adams children began to cross the highway would be proceeding at such speed and would not heed the stopped traffic ahead of him, but would turn around said traffic, get out of control and off the south side of the traveled highway, and strike the Adams children. To require such anticipation would necessarily, in our opinion, make White the insurer of his passengers, which is beyond the strict responsibility placed upon him by law.
*316 By way of summary, we hold that Clerel White did properly perform the special duties imposed upon him, that he properly used his rearview mirror, and finally, we hold the sole and only cause of the accident was the gross and criminal negligence of Randall Brian in driving while intoxicated. These findings necessarily dispose of the plea of contributory negligence.
We are not unmoved by the impact of the tragic accident upon the Adams family, yet it should be understood that notwithstanding the personal and natural feelings, the obligation and responsibility of a court for the administration of justice cannot permit considerations of sympathy to influence its conclusions.
The judgment from which appealed is reversed, annulled and set aside, and plaintiffs' demands are dismissed at their cost.