338 So.2d 713 (1976)
Michael A. BRUNO, Individually and on behalf of/and as the Administrator of the Estate of his minor daughter, Janet Bruno,
v.
Lawrence E. FONTAN.
No. 7356.
Court of Appeal of Louisiana, Fourth Circuit.
September 14, 1976.
Rehearing Denied November 16, 1976.
*714 Windhorst, Heisler, De Laup, Wysocki & Klein, Jerome M. Volk, Jr., New Orleans, for plaintiffs-appellants.
Deutsch, Kerrigan & Stiles, Francis G. Weller, New Orleans, for defendant-appellee.
Before GULOTTA, SCHOTT and ST. AMANT, JJ.
ST. AMANT, Judge.
This is a malpractice action against an attorney and his errors and omissions insurer for failure to timely file a tort action on behalf of the plaintiff. The insurer stipulated that its insured attorney was negligent in failing to file suit and conceded liability if the plaintiff's injuries were the consequence of a tort on the part of anyone. The trial court rendered judgment in favor of defendants, finding that the plaintiff "was guilty of contributory negligence". Plaintiff has appealed and we reverse.
Janet Bruno, then nine years of age, was injured while riding as a passenger on a school bus on March 22,1965. This suit was not tried until 1975 so that both parties and *715 the trial judge were faced with the difficult task of attempting to reconstruct events which took place a decade earlier after the witnesses' memories were necessarily dimmed by the passage of time.
The record indicates however that Janet, a student at St. Louis King of France School, boarded a school bus designated as Tinker Belle No. 3 at the conclusion of the school day for the purpose of returning home. The bus was overcrowded with some six or seven students standing in the aisle. Janet took a position on top of one of the seats with her back facing the front of the bus, her feet braced against the seat in front of her, and her left arm resting on the window. Admittedly sitting on top of the seats was a practice forbidden by the rules of the school but it was a common practice both before and after the accident as a result of the overcrowded conditions on the bus. The only alternative available to Janet was to stand in the aisle with the other six or seven children who had not been able to secure seats.
The school bus, being driven by Marvin Bordelon, proceeded down Carrollton Avenue to the intersection with Hammond Highway where the bus driver intended to make a right hand turn. The bus was going up an incline as it approached the intersection which was controlled by a "STOP" sign at the top right hand side of the incline. Janet was injured when her upper left arm came in contact with the sign.
The precise manner in which the accident happened is a matter of vigorous dispute. Plaintiff claims that the bus driver accelerated as he went up the incline and made a sharp right hand turn causing the bus to "rock" and thrusting another student sharply against her with the result that her arm was involuntarily thrust out of the window. Plaintiff further claims that the bus scraped the sign as it made the right turn. Defendants on the other hand contend that Janet was riding with her arm out of the window prior to the accident and that the bus did not actually come in contact with the sign.
The trial judge in brief written reasons for judgment made two findings of fact; first, "At the time of the accident Janet Bruno had her arm out of the window" and second, "The `STOP SIGN' did not scrape the side of the bus". It is a fundamental principle of our law that factual findings by the trial court are entitled to great weight and will not be disturbed on appeal unless manifestly erroneous. From our review of the record we cannot say that the trial court committed manifest error in either of the above findings of fact which we therefore accept as conclusive for purposes of this opinion. However, these factual findings do not dispose of the issues.
In Louisiana school buses are considered to be "common carriers" as distinguished from "private carriers" and as such the driver of a school bus owes his passengers the "highest degree of care". Landry v. Travelers Indemnity Co., 155 So.2d 102 (La.App. 1st Cir. 1963); Adams v. Great American Indemnity Co., 116 So.2d 307 (La. App. 2nd Cir. 1959); Mire v. Lafourche Parish School Board, 62 So.2d 541 (La.App. 1st Cir. 1952).
In Landry, supra, at page 103, the court stated ". . . where a passenger is not safely transported to his destination the carrier bears the burden of proving its freedom from negligence and must overcome the presumption against it by a preponderance of the evidence." In Mire, supra, the court declared that ". . . the general rule may be stated that the carrier is bound to exercise as high a degree of care, skill, and diligence in receiving, carrying and discharging a passenger as the circumstance of the case will permit." The court in Mire further stated ". . . the carrier is required to do all that human sagacity and foresight can do under the circumstances.. . ."
In the instant case we are compelled to hold the school bus driver guilty of negligence *716 when measuring his conduct against the standard of care required by our jurisprudence for common carriers. He admitted that he was aware of the fact that the passengers on his bus frequently extended their arms out of the windows despite a school rule to the contrary. He also admitted that he was aware of the fact that the sign at the intersection was leaning into the street. Under these circumstances he was under a duty as he approached the sign either to first ascertain before proceeding that all passengers had their arms safely in the bus or alternatively to have been careful not to drive so close to the sign as to imperil the safety of his passengers. It is immaterial whether the bus actually struck the stop sign or not. It is evident that if the bus did not hit the sign the bus driver at least drove too close to the sign for safety.
The facts presented here are similar to those involved in Yarberry v. Shreveport Railways Co., 117 So.2d 637 (La.App. 2nd Cir. 1959), and the early Supreme Court case of Clerc v. Morgan's La. and Texas Railway Co., 107 La. 370, 31 So. 886 (Sp.Ct. 1902). Although neither of the cited cases involved school buses each dealt with the question of the liability of a common carrier to a passenger whose arm was injured while protruding from a window.
In Yarberry, supra, the plaintiff contended that her right arm was resting on the ledge of the open window at the time the defendant's bus stopped at the curb to pick up a passenger and that as the bus started to leave the loading zone her arm was caught between the bus and a telephone utility pole and as a result received a mashing injury. The court noted the evidence to the effect that there: were no marks of contact either on the side of the bus or the pole and that the location of the pole was at least six to eight inches removed from the curb, but held this evidence insufficient to exonerate the defendant in view of the burden of care imposed upon a common carrier.
In Clerc, supra, the plaintiff was seated at the window of a train with his arm on the sill and protruding slightly out of the window. His arm was injured when it came in contact with an open door on a freight car on an adjoining track. The court noted that defendant could expect passengers to put their arms out of the windows, that the plaintiff had his arm out of the window through inadvertence which was not negligence per se, and that plaintiff did not appreciate the danger since it had not happened to anyone previously. Judgment was rendered in favor of plaintiff rejecting the defendant's plea of contributory negligence.
In the instant case the trial judge impliedly found negligence on the part of the bus driver in concluding that "Janet Bruno was guilty of contributory negligence."
A plea of contributory negligence is an affirmative defense. The burden of proof rests upon the party asserting contributory negligence to establish it by a preponderance of the evidence. Furthermore, the test for contributory negligence on the part of children is not the same as that of an adult. Woods v. Cappo, 232 So.2d 578 (La.App. 1st Cir. 1970); Morgan v. Travelers Insurance Co., 224 So.2d 484 (La.App. 3rd Cir. 1969); Ates v. State Farm Mutual Automobile Insurance Co., 191 So.2d 332 (La.App. 3rd Cir. 1966).
In Woods, supra, the court stated:
"The test for contributory negligence on the part of a youth is not the same as that of an adult. That is to say, the child's age, intelligence, and experience, under the particular circumstances must be considered and they are not expected to react in the same manner as an older and more mature person."
Likewise, in Ates, supra, the court declared:
"The test to be applied to determine the contributory negligence of small children is `a gross disregard of one's safety in the face of known, perceived and understood dangers.'"
In the instant case we have accepted the trial court's finding that "At the time of the accident Janet Bruno had her arm out *717 of the window" but this does not dispose of the crucial question as to why her arm was out of the window. As noted earlier plaintiff contends that her arm was thrust out of the window as a result of the action of the bus driver in accelerating up the incline and turning sharply to the right causing the bus to "rock" and thrusting another passenger against her. If this is correct the bus driver was responsible for her position of peril.
In any event if the plaintiff was riding with her arm out of the window prior to the accident she had her back to the front of the bus, she was unaware of the sign leaning into the intersection, and she was unaware of the fact that the bus was approaching this dangerous obstacle. There was therefore no known, perceived or understood danger on her part although the dangerous condition was readily apparent to the bus driver. We conclude in view of all of these facts that the defendant has failed to meet the burden of proving contributory negligence on the part of this nine year old child.
On the question of quantum, Janet was initially confined to the hospital for a period of one week following the accident during which time she suffered considerable pain and discomfort. Following her discharge from the hospital she continued to suffer pain and discomfort for an extended period of time. She was unable to participate in various school activities and was forced to undergo an extensive program of therapy and exercises designed to rehabilitate her arm. The arm was considerably disfigured and some five years after the accident she re-entered the hospital for surgery designed to correct this condition. Additional therapy was required thereafter.
Although the surgery was partially successful the arm continued to be disfigured to some extent. The plaintiff's physician last examined her four days prior to the trial at which time she had only minimal residual physical disability but considerable cosmetic deformity. The plaintiff has thus suffered the embarrassment of this condition for a period in excess of ten years and will continue to do so in the future. We are of the opinion that Janet's physical injuries, pain, suffering, temporary disability and permanent cosmetic deformity justify an award of $15,000.00. In addition her father is entitled to recover proven medical expenses of $1,559.05.
For the foregoing reasons the judgment of the trial court is reversed and it is now ordered, adjudged and decreed that there be judgment in favor of Michael A. Bruno individually in the sum of $1,559.05 and in favor of Michael A. Bruno as the administrator of the estate of his minor daughter Janet Bruno in the sum of $15,000.00 together with legal interest on both of said sums from date of judicial demand until paid and for all costs.
REVERSED AND RENDERED.