CULPEPPER, Judge.
This is an action for damages instituted by Mrs. Elda Breaux Perera, individually, and on behalf of her minor children, against Johnnie Johnson, d/b/a Johnson Rental Service, and which arose out of the accidental death'of plaintiff’s husband. A petition of intervention was ’filed by Underwriters of Lloyds, London, England, in which intervenors sought to recover the amounts which it had paid or might pay as workmen’s compensation.
The defendant filed exceptions of no cause of action to the original petition and to the petition of intervention, which exceptions were sustained by the lower court, and the matter is now before this Court on consideration of these exceptions.
Plaintiff’s petition is quite lengthy, hut the essentials thereof may be summarized as follows:
The plaintiffs’ husband and father was employed on a project which involved the erection of bulkheads on a canal as reinforcement for a gas pipeline. The erection of the bulkhead was accomplished by the driving of interlocking steel piling and .in order to drive these pilings, the decedent’s employer rented a crane from the defendant. This crane was used by decedent’s employer to raise an air hammer which was used to drive the pilings on the project. On or about January 6, 1957, and for a period of some days thereafter, the decedent was working in and around the construction site in the general vicinity of the crane. Because of its weight, the air hammer, which the crane was used to lift, placed an extra or unusual strain on the crane, making it necessary that the crane operator handle the crane with care.
On the morning of January 10, 1957, after about half of the piling had been driven, in order to prepare for the next sheet of pilings, it was necessary that the tops of the pilings be burned or welded. To weld these pilings at the top, another employee (John Morgan) was lifted to the top of the pilings on the air hammer. The air hammer was lifted by the crane operator by a friction clutch. The employee who was to do the welding stood on top of the air hammer and was lifted to the top of the pilings. Upon reaching this level, the operator of the crane disengaged the friction clutch and engaged his brakes, which were two separate operations, and upon so' do *495 ing, he found that the brakes were defective and would not hold the air hammer stationary in the air, but allowed it to slowly fall. In this connection, plaintiff makes the following pertinent allegations:
“31.
“The crane operator tried to stop the fall of the air hammer with the braking band, but to no avail, and the hammer contimted to slide or fall slowly toward the ground with the brakes only able to hold partially, and underneath which hammer the decedent, and nearby Settoon and the foreman, were working on the measurements.
“32.
“At this moment the crane operator, realizing that the brakes on the Lorain 50 crane would not hold the air hammer up, had to let it down, because there was no purpose in trying to keep the air hammer in the air with inadequate brakes.
“33.
“The crane operator further realized that suspending the air hammer by use of the friction band would serve no purpose; since the brakes would not hold, he should let the hammer down for the repair of the brakes; the operator was also fearful of keeping the air hammer in the air any longer than necessary because of the danger to John Morgan.
“34.
“Therefore, the crane operator let the hammer slowly fall, braking as much as possible, and keeping his eyes at all times on John Morgan; the air hammer descending slowly with Morgan swinging or riding on the hammer.”
The. decedent was working in and about the point where the crane was located and where the air hammer had been raised and was descending and was in fact working directly under the air hammer so that when it was let down it was let down upon the decedent, inflicting upon him serious injuries of which he died. It is alleged by the plaintiff that the crane operator did not or could not see the defendant and as a result of which he let the hammer down on the decedent, inflicting the injuries complained of in this suit.
Plaintiff makes further and additional alternative allegations in the latter paragraphs of his petition, which urge different legal theories but do not detract from or in any wise change the’ principal allegations of fact plead by him or do more than reiterate the defective condition of the crane and in no wise alter the essential nature of her demand.
To this petition, the defendant Johnnie Johiison filed an exception of no cause of action, which as noted above, was sustained by the lower court.
In sustaining the exception of no cause of action, the lower court in a very well considered written opinion held that the defect of the crane as complained of by the plaintiff was not the proximate, but was the remote cause of the accident which resulted in decedent’s death and that the direct and proximate' cause thereof was the negligence of the operator of the crane in failing to observe the presence of the decedent at the point where he lowered the air hammer and lowering the air hammer upon him.
Assuming the allegations of the petition to be true, as the Court must for the purposes of this decision, the issue is whether the alleged defective condition of the crane was the proximate cause of the decedent’s death, or was there an intervening independent cause which was the proximate cause, thus making the alleged defective condition of the crane a remote factor. The jurisprudence is replete with cases defining proximate and remote causes and setting out the criteria by which they are determined.
*496 In order for the plaintiff to recover in the instant case, the Court must find that the negligence of the defendant was a proximate cause of the resulting injuries to the decedent. Harvey v. Great American Indemnity Company, La.App., 110 So.2d 595. In Pouncy v. Temple, La.App., 41 So.2d 139, 146, the Court of Appeal for the Second Circuit had under consideration a case brought for the recovery of injuries resulting from a fall from a fire escape. The issue before the court was whether the proximate cause of the accident and resulting injury to the plaintiff was the defective construction of the fabrication of the fire escape. In holding that the fabrication of the fire escape was the remote cause of the accident, the court used this language:
“We know of no law, nor have we been cited to any, which would justify a holding that a manufacturer’s negligence in the fabrication of a product would justify recovery in an instance where the negligence and the resulting defect neither caused nor contributed to the occurrence of an accident. Nor do we perceive that there is anything inherently dangerous in a fire escape. The danger which came into being in the instant case was not the result of any negligence of the defendant Temple, but was created solely and entirely by the negligence of another party who had no connection with the defendant.
“It is entirely conceivable that an automobile might be afflicted with a number of defects occasioned by negligence in design, fabrication or assembly of a manufacturer. But in order for a driver to recover for injuries sustained in an accident it would be incumbent upon him to allege and prove that these defects or one of them was the proximate, moving and efficient cause of the accident.”
Ultimately, we have determined that under the allegations of the petition, no cause of action against the defendant is stated because the petition affirmatively shows that despite any negligence alleged on the part of the defendant, the decedent’s death resulted from an intervening cause, namely, the negligence of the crane operator. As the Louisiana cases cited below hold, and as stated in Prosser on Torts (2nd ed. 1955) Section 49, p. 266:
“An intervening cause is one which comes into active operation in producing the result after the actor’s negligent act or omission has occurred.
“The defendant ordinarily will not be relieved of liability by an intervening cause which could reasonably have been foreseen, nor by one which is a normal incident of the risk created.
“The defendant will ordinarily be relieved of liability by an unforeseeable and abnormal intervening cause which produces a result which could not have been foreseen. * * * ”
See: Jackson v. Jones, 224 La. 403, 69 So.2d 729: Lee v. Powell Bros., etc., 126 La. 51, 52 So. 214; Adams v. Great American Indemnity Company, La.App. 2 Cir., 116 So.2d 307, certiorari denied; Ardoin v. Williams, La.App. 2 Cir., 108 So.2d 817; Kendall v. New Orleans Public Service, Inc., La.App.Orl., 45 So.2d 541; Williams v. Pelican Creamery, Inc., La.App. 1 Cir., 30 So.2d 574.
Am examination of the allegations of the plaintiff’s petition in the light of the above authorities shows that the alleged defective condition of the crane was not the proximate cause of the injuries which resulted in the death of Mr. Perera. It is noted that the plaintiff alleges that the hammer was raised to the desired height with the friction clutch and that it was only after the friction clutch was released and the brakes were applied that the hammer began to descend slowly and it is thus apparent that at all times during the descent of the hammer its further descent could have been prevented or its descent controlled by the application of the friction *497 clutch. Although it might not have been possible for the crane operator to hold the air hammer stationary, it is apparent from the allegations of the petition that the crane operator could control the descent at all times by simply applying the friction clutch, and again raising the hammer to such height as he might desire. There is certainly nothing in the petition which contradicts the affirmative allegation that the hammer was being lowered slowly and that, in fact, it was being lowered so that it might be repaired. This being true, that is, the ability to raise the hammer or to control its descent, it is apparent that the operator of the crane (or his assistant mentioned in paragraph 25) had full opportunity and had the duty to ascertain that he could lower the air hammer to the ground without injury to the employees on the job site. He or his assistant should have seen the decedent in this place of danger and this failure to see him and the consequent lowering of the hammer on him was the direct and proximate cause of the injury which resulted in his death. The defective brake was only a remote cause. Certainly the defendant could not foresee that the operator of the crane, on discovering the defective brake, would voluntarily lower the hammer on a fellow employee whom he or his assistant should have seen. This willful and voluntary act of the crane operator was itself sufficient to stand as the cause of the accident and was clearly an intervening cause as defined by the above authorities.
The plaintiff argues that the intervening actions of the crane operator were involuntary rather than voluntary because they were executed in an emergency created by the defective brakes. Plaintiff’s argument is that when the brakes began to slip, the crane operator’s principal concern was for Morgan, who was standing on the top of the air hammer, and that he kept his eyes on Morgan as the hammer slowly descended. In paragraph numbers 35 and 36, we find the following allegations with reference to this emergency:
“35.
“The crane operator did not see or know of the presence of decedent because the operator was concentrating all his attention on John Morgan to prevent any swinging or swaying of the hammer which might injure Morgan.
“36.
“Consequently, the air hammer fell slowly to the ground and struck the decedent who was leaning forward making measurements with his steel tape, unaware and unwarned of the great danger descending upon him.”
Plaintiff calls our attention to the many cases in our jurisprudence which hold that a person faced with an emergency, not of his own making, is not expected to act with the coolness, precision or the prudence that under other circumstances would be construed as an essential of due care. Wood v. Manufacturers Casualty Insurance Company, La.App., 107 So.2d 309; 38 Am.jur. 874. Under the emergency doctrine, plaintiff argues that the crane operator should be excused for not having seen, or ascertained through his assistant, that Mr. Perera was on the ground directly underneath the hammer.
In answer to this argument, we call attention again to the allegations that the hammer was descending slowly and was under the control of the crane operator because he could have stopped the descent of the hammer and raised it again at any time by simply applying the friction band. The descent of the hammer was, therefore, controlled by the crane operator and he and his assistant were clearly negligent in failing to ascertain that the way was clear for them to lower this extremely heavy hammer to the ground in an area where other employees were working, even though the operator was concerned for the safety of John Morgan on top of the hammer. The hammer did not fall swiftly and uncontrolled in such a manner that the crane *498 operator did not have time to act with prudence and precision. A reading of paragraphs 30 through 36 of the petition shows that the air hammer began to slide or fall slowly with the brakes only able to hold partially. It is alleged in paragraph 32 that “At this moment the crane operator, realizing that the brakes on the Lorain SO Crane would not hold the air hammer up, had to let it down, because there was no purpose in trying to keep the air hammer in the air with inadequate brakes”. This allegation in paragraph 32 clearly indicates that the crane operator made a deliberate and voluntary decision to let the air hammer down slowly, which he did without ascertaining whether anyone was underneath. Even if the crane operator was concerned for the safety of Morgan standing on top of the air hammer, he clearly could not be relieved of the duty of determining that none of his fellow employees were beneath this hammer which was of such weight that it would crush anyone on whom it was lowered. For these reasons, we are of the opinion that the negligence of the crane operator cannot be excused or held to be involuntary under the emergency dpetrine.
Counsel for the plaintiff calls our attention to the fact that in paragraphs 41 through 52 of this petition, he pleads separately and in the alternative four different legal theories and implies at least one other theory for a cause of action. In his brief counsel sets forth these legal theories, as follows:
“The first cause of action alleged by the petition is that the defendant knew of the purpose and contemplated use of the crane, that the defendant knew or should have known that there was a reasonable likelihood that the brakes of the crane would give way after usage under the overload, and that the furnishing of the crane under the circumstances created a danger that resulted in the giving way of the brakes and the death of Perera.
“The second cause of action alleges that the brakes of the crane were defective and in poor condition when the crane was leased and that the defective brakes caused the fall of the hammer, resulting in the death of Pere-ra.
“The third cause of action alleges both that the crane was overloaded and that the brakes were defective, these two factors causing the brakes to give way and the hammer to fall upon Pe-rera.
“The fourth cause of action is under a res ipsa loquitur theory, which would require the defendant to show a freedom from negligence.
The fifth cause of action which is stated in part under Paragraphs 48, 49, 50, 51 and 52 of the petition, and which is in part implied by the allegations of fact, is that the defendant, leasing equipment for a known purpose, warrants that the equipment is free from defects and fit for the purpose for which it is to be used; that the defects caused the death of the decedent; and that the defendant is therefore liable.
“The first four theories are negligence theories and the fifth is a warranty (or strict liability) theory.”
We note that although counsel argues five alternative legal theories for a cause of action, he alleges only one set of facts. Under any of the five legal theories set forth above, the clear negligence of the crane operator was the independent, intervening and proximate cause and the defective brake was only the remote cause of the accident, for the reasons hereinabove set forth.
It is our opinion that the Judge of the court below correctly sustained the exceptions of no cause of action and his judgment is, therefore, affirmed. All costs of this appeal are assessed against the plaintiff.
Affirmed.