## JONES v. BATON ROUGE ELECTRIC CO.

### No. 2043.

Court of Appeal of Louisiana.  First Circuit.

Dec. 20, 1939.

Fred G. Benton and Fred S. LeBlanc, both of Baton Rouge, for appellant.

Taylor, Porter & Brooks and C. W. Phillips, all of Baton Rouge, for appellee.

OTT, Judge.

The suit is for damages in the sum of $5,550 on account of injuries which plaintiff claims to have received on December 21, 1937, around eight o'clock P. M., while riding as a passenger on one of the busses operated by the defendant company in the City of Baton Rouge as a common carrier of passengers for hire.  Plaintiff alleges that he slipped on a banana peel in the aisle of the bus as he attempted to disembark from the bus at the corner of Government and Dufrocq Streets;  that he slipped and fell against a seat in the bus

and injured his knee and sustained a severe blow in his stomach which caused a hernia.

The substance of the charges of negligence leveled against the defendant company is contained in Articles 9, 10 and 11 of the petition which we quote:

"That the said bus was one of eight busses that were being operated by the said defendant at the time continuously in said service in both directions from an early hour in the morning until a late hour in the evening, and that during the whole of this time the said bus was operated in the control of a one man driver, as shown, with a change of drivers between two alternating employees at four hour intervals.

"Petitioner alleges on information and belief in reference to the nature of the service that was being maintained by said defendant at that time, that the bus in question left the barn at an early hour in the morning, and that it did not return to the barn until the day's schedule was completed late that night, and that during these long hours it was being continuously operated by one man without any inspection of its interior and without any regular inspection service whatever on the part of said defendant to keep the said bus and its aisles and seats free from banana peelings and other such dangerous objects.

"Petitioner alleges further on information and belief that in the course of a day hundreds of passengers of men, women and children, both whites and blacks, and of every kind and character socially and otherwise, boarded said bus with bundles, packages and articles and were permitted to bring bananas and other fruits on the bus, and to eat them there without any reasonable supervision or inspection on the part of the said bus operator."

The defendant company denied that plaintiff received an injury while riding as a passenger on its bus, and denied that there was any banana peel in the aisle or on the floor of the bus on which plaintiff slipped and fell, and denied any negligence on its part or that of the operator of the bus, and averred that the bus was properly inspected and was manned by one capable operator.

The trial court gave full and lengthy reasons for his conclusions and dismissed plaintiff's suit. The case is before this court on an appeal by the plaintiff from that judgment.

While there is some doubt from the evidence as to whether or not plaintiff slipped on a banana peeling and fell against a seat of the bus and sustained the injuries which he claims resulted from the fall, on which point the trial judge also expressed some doubt, yet it may be conceded for the purposes of deciding this case that the evidence justifies the finding that plaintiff did slip on a banana peeling in the aisle and near a seat of the bus and fell against one of the seats as he arose and started to leave the bus; that he received an injury to his knee and a bruise on his stomach which may or may not have caused the hernia. However, assuming that plaintiff has proven these important facts, we think he has failed to show any negligence on the part of the defendant company, or, put in a stronger form, we think that the defendant has shown that it was not guilty of any negligence.

It is shown that the bus on which plaintiff was riding as a passenger was thoroughly cleaned and inspected the night before it went out on the run in the early morning of December 21, 1937, the day on which plaintiff claims to have been injured; that the alleged injury occurred around eight o'clock P. M. of that day, and that the motorman operating the bus had gone through it around five o'clock in the afternoon of that day, some three hours before the alleged accident occurred, and found nothing in the bus, on the floor or in the aisles, except some cigarette stubs, and things of that character; no banana peeling was found or observed on the floor or in the aisles of the bus, and there is nothing to show how or when the banana peeling got in the aisle of the bus, if there was such a foreign substance there.

The bus had a capacity of twenty-five passengers and it is shown that busses of this size and capacity are usually operated by one motorman who not only operates the bus, but collects the fares, opens the doors for the passengers to embark and alight, and has full charge of the bus.

■ The law on the responsibility of carriers of passengers for hire for injuries received by a passenger from slipping in the aisles of the conveyance on account of a banana peel or other foreign substance therein, is stated in 13 Corpus Juris Secundum, Carriers, p. 1400, § 744, subd. c., as follows:

"While the carrier's employees have a duty to remove objects from the aisles and platforms of the vehicles when they have notice thereof, the carrier is not liable for injuries occurring where a passenger slips on a foreign object, such as a banana peeling, etc., or trips over an object in the aisle of the car, such as a hassock or piece of baggage, etc., unless its employees placed it there or had an opportunity to notice the presence of such object and remove it."

■ The duty of a bus company to inspect its busses for the presence of such foreign substances is stated in 4 Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed., p. 30, at the end of Section 2167 as follows:

"Although bound to inspect its busses like any other common carrier, a bus company is not required to keep up a continuous inspection or to know at each moment the condition of every part of a bus."

In the note at the bottom of page 30 the author cites in support of this statement of the law the case of Casale v. Public Service Co-Ordinated Transport, 160 A. 326, 10 N.J.Misc. 611, the note reading as follows:

"Where a bus driver made a proper inspection of his bus before his trip began, the presence of a banana peel dropped by a passenger in the course of a trip, on which another passenger slipped, was not sufficient, unless reasonable opportunity for inspection on the trip was afforded, to charge the company with negligence."

■■ Of course, there is nothing in this case to show that the driver of the bus, or any other employee of the company, caused the banana peeling to be placed in the aisle of the bus, nor is there any evidence to show that the motorman knew, or had reasonable notice that it was there, and then failed to remove it. Without attempting to lay down a rule as to how frequently the driver of a bus carrying passengers for hire should inspect the bus to ascertain if there are any foreign substances in the aisles or on the floor of the bus which might be dangerous to passengers, we are not able to say that the bus company was negligent in this case where it is shown that the bus was well cleaned and inspected the night before it began the daily run, and where the motorman some three hours before the accident made an inspection of the interior of the bus and found no banana peeling on the floor or in the aisle. The daily cleaning and inspection of the bus before it begins its daily run, coupled with a reasonable observance by the motorman during the operation of the bus to ascertain that there are no foreign substances in the aisles, would seem to be a reasonable precaution in this respect, and if a passenger or third person drops or throws some foreign substances on the floor or in the aisle where the motorman knows nothing of it and has not had a reasonable opportunity to ascertain such fact, his failure to know of its presence is not unreasonable and cannot be said to be negligent.

We know of no rule or law that would require more than one motorman on duty when a bus of the size and capacity of the one in which plaintiff claims to have been injured, is being operated, nor do we know of any rule or law that would require the bus company to provide and enforce a regulation that none of its passengers could bring fruit, bananas and other articles on the bus with them while riding as passengers thereon.

■■ The carrier must use the highest degree of care in selecting safe vehicles and equipment for the safety of its passengers, and these vehicles and appliances must be vigilantly and regularly inspected to see that they are kept in order and in the very best possible condition to insure safety in transportation. And where an accident occurs from some defect in the vehicle or its equipment, the presumption arises that the carrier has been negligent in furnishing a safe conveyance for transportation, and unless the carrier can exculpate itself from any negligence in that respect, it will be held liable. Martin v. Interurban Transportation Company, 15 La. App. 256, 131 So. 514.

■ And, as was said by this court in the recent case of Hughes v. Baton Rouge Electric Company, La.App., 188 So. 473, where a passenger is injured by the operation of a bus, the burden is thrown on the bus company to show that it was free from negligence in the operation of its bus, although it is not required to show how the accident occurred or whose fault brought it about.

■ However, the rule is different where the injury results from some foreign substance placed in the aisle or on the

floor of the conveyance by some third person, in which case the plaintiff must show that the foreign substance was placed there by an employee of the carrier, or that the employee knew, or by the exercise of proper care and diligence, should have known of the presence of such foreign substance and failed to remove it. Windham v. Atlantic Coast Line R. Co., 5 Cir., 71 F.2d 115; Old South Lines, Inc., v. Mc-Cuiston, 5 Cir., 92 F.2d 439.

For the reasons assigned, the judgment is affirmed.