113 So.2d 114 (1959)
Mrs. Sindy JOHNSON, Plaintiff-Appellee,
v.
CONTINENTAL SOUTHERN LINES, INC., Defendant-Appellant.
No. 9040.
Court of Appeal of Louisiana, Second Circuit.
May 27, 1959.
*115 Stafford & Pitts, Alexandria, for appellant.
Donald M. Garrett, R. Hunter Pierson, Alexandria, for appellee.
AYRES, Judge.
This is an action in tort wherein plaintiff seeks to recover of the defendant damages for personal injuries sustained September 19, 1957, while a fare-paying passenger on a common carrier bus of defendant en route from Houston, Texas, to Alexandria, Louisiana. The bus boarded by plaintiff was bound for New Orleans, which required plaintiff to transfer to a bus of her destination at defendant's bus terminal in Kinder, Louisiana. On the arrival of the bus at the aforesaid terminal, plaintiff, in alighting therefrom, stepped on an empty Coca Cola bottle in the aisle covered by a newspaper, precipitating her fall and causing the injuries for which she seeks damages.
Negligence, lack of care and want of circumspection are charged to the bus driver, employee of defendant, in allowing a party to board the bus with Coca Cola bottles, knowing that they would create a hazardous condition once the contents had been consumed and the bottles placed on the floor; in failing to instruct the passenger to bring the empty bottles to the front of the bus, and in failing to pick up the bottles after the contents had been consumed, particularly after their presence was called to his attention, or to properly clean and maintain the aisle in a safe condition for the passengers or to provide plaintiff with a safe mode of travel.
The defendant denied generally and specifically all the charges of negligence directed to its driver, particularly that its driver had any knowledge or notice of the presence of the bottle on the floor of the bus, and, although admitting that plaintiff fell as a result of stepping upon a Coca Cola bottle, defendant contends that plaintiff knew of the presence of the bottle on the floor. Further answering, defendant alleges "* * * that the accident giving rise to this suit was not caused by any negligence on the part of the defendant or its employees", and "* * * in the alternative that the plaintiff knew of the presence of the Coca Cola bottle on the floor of the bus; that her act in stepping upon it under the circumstances was negligence proximately causing the accident, which is specifically pleaded in bar of this suit."
The trial court held defendant's driver's negligence constituted the proximate cause of the accident for the reason, among others, of his failure to make a proper investigation and inspection of the bus after his attention was called and directed to the presence of empty bottles rolling on or across the aisle, and, accordingly, awarded plaintiff judgment for $3,000 for the personal injuries sustained by her, plus $480.30 for medical expenses incurred in the treatment of said injuries.
From the judgment defendant has appealed, re-urging its driver's freedom from fault and, in the alternative, plaintiff's contributory negligence, and, finally, that the award was excessive. In answer to the appeal, plaintiff asserts the inadequacy of the award and prays that it be increased to $7,500, plus the aforesaid medical expenses.
*116 The facts established by the record may be briefly stated. The driver of the bus out of Houston completed his run at Beaumont and its operation was taken over by one F. G. McClelland. On leaving Beaumont plaintiff occupied the seat immediately to the rear of the driver. Before departing, however, a lady boarded the bus accompanied by three small children, all of whom occupied seats directly across the aisle from plaintiff. The lady brought with her sandwiches and four Coca Colas. En route the children ate the sandwiches and drank the Coca Colas. Some of the contents of both food and drinks was dropped or spilled on the floor of the aisle, which was covered over by a piece of newspaper placed in the aisle by plaintiff. During the journey the empty bottles began to roll on the floor. Plaintiff placed one underneath the driver's seat. When the bus arrived at a railroad crossing about two blocks distant from the bus station or terminal in Kinder, plaintiff picked up another bottle from the aisle and handed it to the driver.
That the driver made no adequate investigation or inspection clearly appears from his own testimony. He made no observation of the condition in the aisle resulting from the spilling of the drinks and the dropping of particles of the sandwiches. Neither did he observe the presence of the newspaper in the aisle. He testified he did not look to ascertain the possible presence of other bottles in the aisle, notwithstanding he had heard a bottle rolling on the floor and although his attention had been directed to that possibility.
There were possibly eight passengers on the bus when it arrived at the Kinder station, six of whom preceded plaintiff and a young man, Willard Griffin, in departing from the bus. The driver had left the bus and was assisting a passenger in transferring to another bus. After awaiting the other passengers leaving the bus, plaintiff turned to get her handbag on the opposite side of her seat and then as she came down from the platform on which the seats were located and which was elevated about six inches above the aisle, she stepped on an empty coke bottle underneath the newspaper lying in the aisle, which caused her foot to slip out from under her, precipitating her fall to the floor of the bus.
In reviewing the facts to determine if defendant's driver was guilty of negligence constituting a proximate cause of the accident, the trial court stated:
"An admitted fact in the case is that plaintiff's fall was caused by her act of stepping upon a bottle which was on the floor of the bus and there is no dispute about the occurrence having taken place as plaintiff claims. Further, it is conceded by defendant that there were at least three bottles on the bus prior to plaintiff's accident. The weight of the evidence is to the effect that these bottles were brought aboard by another passenger. The driver did not observe this passenger with the bottles and plaintiff and Griffin did.
"The bus driver was not aware of any bottles being on the floor until the bus had stopped at a railroad crossing near Kinder and approximately two blocks from the company's station. According to him only one bottle was brought to his attention, it being picked up from the aisle and handed to him by plaintiff. There was at least one other bottle on the floor at the time as plaintiff picked it up and put it under the driver's seat and he admitted finding it there. According to the independent witness, Mr. Griffin, he also picked up at least one other bottle and handed it to the driver. This witness also related that the driver got out of his seat but did not go toward the rear of the bus. The testimony of Mr. McClelland, the driver, is that he did nothing and said nothing after hearing the bottle roll across the floor. All that occurred was the act of plaintiff in picking up the bottle and *117 handing it to him. He took no action himself because he assumed that it was only the one bottle. He simply put this bottle on the dash and drove on to the station, where he alighted and began to assist passengers to transfer to other coaches."
The general rule is that a carrier of passengers should exercise a degree of care, skill and diligence for the safety of its passengers as is required by the nature and risk of the undertaking in view of the mode of conveyance and other circumstances involved. This has been held to require the "highest degree of care, skill, and diligence", the "highest practicable care", or "extraordinary care and caution". 13 C.J.S. Carriers § 678, p. 1255. While the degree of care required of a common carrier is not capable of a precise formulation, applicable to all situations that may arise, it is generally held, however, that carriers of passengers are required to exercise the highest degree of care, vigilance and precaution for the safety of those it undertakes to transport and are liable for the slightest negligence. 10 Am.Jur., p. 163, "Carriers", § 1245. The jurisprudence of this State has consistently adhered to this general principle. Laurent Julien v. Captain and Owners of Steamer Wade Hampton, 27 La.Ann. 377; Gross v. Teche Lines, Inc., 207 La. 354, 21 So.2d 378; Wallace v. Shreveport Rys. Co., La.App., 175 So. 86; Hughes v. Baton Rouge Electric Co., La.App., 188 So. 473; Oppenheim v. Toye Bros. Yellow Cab Co., La.App., 7 So.2d 420; Brown v. Homer-Doyline Bus Lines La.App., 23 So.2d 348; Hopper v. Shreveport Rys. Co., La.App., 51 So.2d 845; Chisholm v. Ryder, La.App., 56 So.2d 316; Mire v. Lafourche Parish School Board, La., 62 So.2d 541; Hayes v. Illinois Central Railroad, La.App., 83 So.2d 160; Coleman v. Shreveport Railways Co., La.App., 86 So.2d 590.
This rule was recognized and followed in this State as early as 1875 in the case of Laurent Julien v. Captain and Owners of Steamer Wade Hampton, supra, wherein it was stated, in quoting from Angell on Common Carriers:
"`Common carriers are bound to carry their passengers safely and securely, and to use the utmost care and skill in the performance of their duties.' * * * `And, of course, they are responsible for any, even the slightest, neglect.' * * * `The burden of proof is on the defendants to establish that there has been no disregard whatever of their duties, and that the damage has resulted from a cause which human care and foresight could not prevent.'"
The rule finds particular application and a presumption arises that a carrier has been negligent in furnishing safe conveyance for transportation, where an accident occurs from some defect in the vehicle or its equipment, and unless the carrier can exculpate itself from any negligence in that respect, it will be held liable. Martin v. Interurban Transportation Co., Inc., 15 La.App. 256, 131 So. 514; Jones v. Baton Rouge Electric Co., La.App., 192 So. 539.
However, an exception or modification of the aforesaid general rule is recognized where the injury allegedly results from some foreign substance placed in the aisle or on the floor of the conveyance by some third person, in which case the plaintiff must show that the foreign substance was placed there by the employee of the carrier or that the employee knew or, by the exercise of reasonable care and diligence, should have known of the presence of such foreign substance and failed to remove it. Jones v. Baton Rouge Electric Co., supra; Sewell v. Gulf, C. & S. F. Ry. Co., La. App., 11 So.2d 923; Windham v. Atlantic Coast Line Railroad Co., 5 Cir., 71 F.2d 115; Old South Lines, Inc. v. McCuiston, 5 Cir., 92 F.2d 439.
13 C.J.S. Carriers § 744 c, p. 1400, states the rule as follows:

*118 "While the carrier's employees have a duty to remove objects from the aisles and platforms of the vehicles when they have notice thereof, the carrier is not liable for injuries occurring where a passenger slips on a foreign object, such as a banana peeling, etc., or trips over an object in the aisle of the car, such as a hassock or a piece of baggage, etc., unless its employees placed it there or had an opportunity to notice the presence of such object and remove it."
However, motor carriers owe their passengers the duty of furnishing for them sound and safe vehicles for their passage, and this requirement carries with it the obligation of using the highest degree of care in constantly and vigilantly inspecting them and seeing that they are kept in repair; a mere casual or superficial examination not capable of revealing the presence of even readily discoverable defects is not an adequate inspection to discharge the carrier's duty in this particular. A common carrier by motor bus is likewise charged with the responsibility of keeping the vehicle free from refuse and material likely to cause harm to passengers. 4 Blashfield Cyc. of Automobile Law and Practice, p. 121 et seq., § 2167.
In view of the aforesaid principles, the question determinative of defendant's liability is whether its driver knew or, by the exercise of reasonable care and due diligence, should have known of the presence of the Coca Cola bottle on the floor of the bus or in the aisle thereof and failed to remove it. That the driver had the opportunity to make its discovery by an appropriate inspection is fully established. When the bus stopped at the railroad crossing only two blocks distant from the Kinder bus station, the driver could have and should have made an inspection to determine the aisle or passageway was free of obstruction, particularly in view of the condition of the aisle, the newspaper therein, and the presence of the empty bottles to which his attention had been directed. From these facts and circumstances and from the fact of the driver's attention having been directed thereto, as well as from his failure to make an appropriate inspection and remove the bottle out of the pathway, it could only be concluded that this failure is not consistent with reasonable care and due diligence in view of his knowledge of the existence of bottles in the aisle and the possibility of others lying there. Without making an inspection he had no right under the circumstances to take for granted, or to assume, there were no other bottles on the floor or in the aisle. This is made more evident by the presence of the newspaper in the aisle. The circumstances heretofore detailed were such as to place the driver under a duty to investigate and make certain no danger to the passengers existed while alighting from the bus. His dereliction was most substantial and resulted in the injuries sustained by plaintiff.
Defendant contends, however, that plaintiff was guilty of contributory negligence because she knew of the presence of the Coca Cola bottle on the floor of the bus. On the other hand, plaintiff contends that contributory negligence was not properly pleaded. Consideration of the issue thus raised may be entirely pretermitted as the evidence utterly fails to support the plea. The record is barren of any showing of any knowledge on plaintiff's part that the bottle was underneath the newspaper in the aisle.
Lastly for consideration are the extent and duration of plaintiff's injuries and an award to compensate her therefor. Plaintiff at the time of trial was 70 years of age. In analyzing the medical testimony and in reaching a conclusion that an award of $3,000, plus medical expenses of $480.30, would do substantial justice, the trial court stated:
"Dr. R. P. Foster of Alexandria saw plaintiff on October 7, 1957, when *119 she presented herself complaining of soreness in the right breast and back pain, giving a history of injury in a fall about two weeks previously. Examination of the breast revealed a 3 cm. bruise with approximately 1½ cm. discreet mass in the center of the bruised area. There were visible signs of back limitation and muscle spasm. X-rays revealed a marked osteoporosis. This is described as being a condition in which the bones have been thinned out, usually a result of advanced age. No fracture of the vertebra was revealed. The doctor's diagnosis at this time was a condition of extreme osteoporosis aggravated by trauma. The prescribed treatment was the use of sec hormones and drugs. On the occasion of the next examination on October 15, 1957 the plaintiff continued to complain of pain in the back. At this time it was noted that the breast lobule was enlarged and it was felt advisable to perform a biopsy in order to determine if a blood clot was responsible for the condition or whether a tumor had developed. The biopsy was performed and it was found that there was a non-malignant fatty tumor, which was removed. It was felt that this tumor was caused by recent trauma. Dr. Foster is of the opinion that the `acute episode' of plaintiff's injury had begun to subside by October 28th and had been terminated by November 20th.
"Dr. Foster's last examination was on January 27, 1958, at which time plaintiff had considerable back pain. It is Doctor Foster's opinion that some pain, from the condition of osteoporosis aggravated by trauma, will be permanent.
"On May 5, 1958, plaintiff was examined by Dr. P. M. Davis, Jr., an orthopaedic surgeon of Alexandria, at the suggestion of Dr. Foster. Plaintiff complained to him of back pains and on the examination pain was elicited. Dr. Davis stated his diagnosis thusly:
"I felt the patient had an osteoporosis of her back, which was symptomaticin other words, which was painful. Generally, speaking, the osteoporosis itself does not produce pain, as such, but it is a back which is easily hurt and once it is hurt will produce a fair amount of pain.'
"Dr. Davis felt that the pain was the result of trauma. He recommended that plaintiff wear a lumbosacral brace and continue the hormone therapy.
"The following is from the testimony of Dr. Davis:
"`Q. How long do you think she will have to take this therapy before she would reach a condition of A. Usually, five or six months is sufficient. She has been on this therapy for quite a while, but apparently there was very little change in my x-rays and the x-rays previously taken. Therefore, it would probably take at least three or four more months longer. This is a very slow process, it takes a long time to occur, it takes a long time for it to subside.
"`Q. In your opinion was she, of course as you understand, she is an elderly lady and not a laboring person, was she in a more or less state of disability at the time you examined her? A. I would think more of discomfort. I think the patient can probably do what she wants, but I am sure that she would be uncomfortable.
"`Q. Undergoing painis that correct? A. That's correct.'"
From our review of the record, we are unable to find that the award was either excessive or inadequate. The judgment appealed is, therefore, affirmed at appellant's cost.
Affirmed.