GLADNEY, Judge.
In this action in tort Mrs. Enette Alexander seeks damages for injuries sustained when she fell while alighting from defendant’s bus. The trial court held the evidence supported a finding of liability of defendant and awarded plaintiff the sum of $13,237.48. Defendant has appealed.
The law is well settled that a carrier of passengers must exercise a degree of care, skill and diligence for the safety of its passengers, as is required by the nature and risk of the undertaking in view of the mode of conveyance and other circumstances involved. Under this rule the carrier is held to the highest degree of care, skill and diligence, the highest practical care, or ex *541 traordinary care and caution. 13 C.J.S. Carriers § 678, p. 1255. Johnson v. Continental Southern Lines, Inc., 2 Cir.1959, 113 So.2d 114, 74 A.L.R.2d 1328. Also recognized is the legal principle that where the alleged injury resulted from an object or foreign substance placed in the aisle or on the floor of the conveyance by some third person, it is incumbent upon the complainant to show the foreign substance was placed there by an employee of the carrier or that an employee knew or by exercise of reasonable care and diligence should have known of the presence of such foreign substance and failed to remove it. Jones v. Baton Rouge Electric Company, La.App., 1 Cir., 1939, 192 So. 539; Sewell v. Gulf, C. & S. F. Ry. Company, La.App., 1 Cir., 1943, 11 So.2d 923; Johnson v. Continental Southern Lines, Inc., supra. Thus there is imposed upon a carrier’s employees a duty to remove foreign substances or objects from the aisle and platform of the vehicle when they have actual or constructive notice thereof. In a recent decision of this court, Johnson v. Continental Southern Lines, Inc., damages were awarded to a seventy year old woman passenger who stepped on an empty bottle, covered by a newspaper, and fell in the aisle of the bus. There was evidence that the driver’s attention had been directed to the presence of the empty bottles in the aisle, two of which had been removed and given to him by passengers, and he had failed to make an inspection for the possible presence of other bottles. Counsel for appellee, relying upon the Johnson case, contends that plaintiff need only show she was a fare-paying passenger and received injuries while occupying such capacity and that she need not show a specific act of negligence. We do not find such a conclusion can properly be drawn from that decision, although the opinion recognized that a presumption arises that a carrier has been negligent in the furnishing of a safe conveyance for transportation where an accident occurs from some defect in the vehicle or its equipment, and unless the carrier can exculpate itself from any negligence in that respect, it will be held liable. A presumption of the carrier’s negligence does not arise simply from the presence of a foreign substance placed in the aisle or on the floor of the conveyance by some third person. In such instances a plaintiff must show the substance was placed there by an employee of the carrier or that an employee knew or by the exercise of reasonable care and diligence, should have known of the presence of such foreign substance and failed to remove it.
In substance, petitioner charges the defendant with five specific acts of negligence, which she says contributed to her fall. These were failure to provide a handrail on the bus, failure of the operator to assist her in alighting from the bus, failure to provide adequate lighting in the bus, failure to provide safe steps, and failure to remove vomit from the floor of the bus, which rendered her shoes wet and slippery and caused her to slip on the steps of the bus while she was in the act of disembarking. The defendant expressly denied any negligence on the part of any of its employees or that its equipment was in any wise defective, and specifically pleaded contributory negligence on the part of the plaintiff.
Mrs. Alexander, a woman of fifty-one years of age, and physically sound, boarded defendant’s bus at Columbus, Georgia, about 2:30 o’clock P.M. on April 15, 1960. She was accompanied by her eleven year old granddaughter, Paula Deon Waldon. On the following day at 2:30 o’clock A.M. plaintiff, while alighting from defendant’s bus at its bus station and terminal in Monroe, sustained severe injuries to her back and spine. When Mrs. Alexander got on the bus she took a seat some four or five seats behind the driver. Her granddaughter was seated near the window next to Mrs. Alexander until they arrived at Jackson, Mississippi. Plaintiff testified that she remained on the seat throughout the journey; that the bus was crowded and no other seats were available; that throughout the trip her feet of necessity rested in a puddle of vomit located on the bus floor between her *542 seat and the seat immediately in front of her; that on several occasions the driver, W. W. Conley, went down the aisle of the bus to collect tickets and, in fact, collected her ticket; and that she did not call his attention to the presence of vomit under her feet. She gave this account of her fall:
“Well, when I got on the bus the bus was real crowded and this was the only seat vacant so I took this seat and there was a lot of vomit on the floor and so when we got in to Montgomery they said that the bus would be cleaned out and so when we got back on the bus it hadn’t been cleaned out, so we went on to Jackson and the driver said ‘all get out of the bus, it is going to be •cleaned’, so when I got back on the bus the aisles had been swept out but the vomit was still on the floor and so we came to Monroe and when I got ready to get off — well when I got to the step-down going down the steps my feet slipped out from under me and I rolled from the top of the bus all the way down to the concrete.”
While on the witness stand, plaintiff was asked the direct question as to whether it was her contention she had put her feet in the vomit and that had caused her to slip. She answered in the affirmative and stated the floor was still wet from the vomit when she arrived in Monroe. The testimony is in conflict as to the identity of the step from which she slipped and fell. Plaintiff was doubtful as to the direction of her fall, but was under the impression she fell forward while stepping from the aisle to the vestibule. Other witnesses, particularly Dulaney and Conley, who were in a position to see plaintiff fall, testified Mrs. Alexander fell from the first step upon leaving the vestibule to reach the ground level.
Paula Deon Waldon, the eleven year old granddaughter, and John Randall Dooley, a passenger who boarded the bus at Vicksburg, Mississippi, en route to Dallas, Texas, were witnesses who corroborated plaintiff as to the presence of the vomit. Dooley was seated next to the window on the same seat with Mrs. Alexander after leaving Vicksburg. He testified to the odor but did not recall seeing the vomit or that it was slippery. Paula was seated on the opposite aisle after leaving Jackson and got off the bus just ahead of her grandmother. Her testimony is not informative.
W. W. Conley, the bus driver, testified the bus was given inside cleanings at Montgomery, Alabama, and then again at Jackson, Mississippi; that the employee who cleaned the bus in Jackson went to the back of the bus and cleaned the rest room first, then swept out the bus, taking out papers, trash, etc.; and that he did not smell, see or notice any vomit anywhere in the bus, but that had his attention been called to its presence he would have had it cleaned up at once. He further testified that on the night in question when he drove into the Monroe terminal, he parked and turned the lights on in the bus, opened the door, and stepped out ahead of the passengers; that the little girl came out just ahead of Mrs. Alexander, holding a small overnight case in her hand, and he assisted her to alight; that he had hold of the child and the night-case when Mrs. Alexander started falling headfirst behind the child, and he had no way to catch her as the little girl was in between them. He also testified that the steps of the bus were covered with corrugated rubber, fastened with screws on the risers, not on the treads, and that the white lines on the coverings of the steps were of white rubber made so as to delineate the edges of the steps.
S. W. Dulaney, a Monroe police officer, was standing outside watching the passengers alight from the bus and saw Mrs. Alexander when she fell. He first testified that Mrs. Alexander’s foot appeared to catch on a metal strip along the edge of the first step leaving the vestibule, but later qualified this testimony by saying Mrs. Alexander stumped her toe on the step, but he did not know how. Two other witnesses, Mrs. Mattie Martin and Mrs. Edna Martin, gave testimony of very little probative *543 value. J. J. Franklin, in charge of maintenance of the buses in Monroe, testified that the steps of the bus were covered with the most modern type of rubber composition material, molded over the edge of the treads so as to eliminate any possible obstruction.
Plaintiff’s counsel has argued the defendant common carrier is in a better position to disprove negligence, and is justifiably required to exculpate itself from fault. This contention has been answered with the affirmation that it has discharged its burden of showing freedom from negligence.
As pointed out above, the defendant was charged with being negligent on five counts. In our opinion all of these charges have been completely disproved and the defendant must be relieved of liability for the injuries sustained by the plaintiff. The first of the enumerated charges, that the bus was not equipped with a handrail, has been abandoned in plaintiff’s brief. The second charge directed to the failure of the operator to assist plaintiff in getting off the bus, is unsupported by substantial evidence. The preponderance of the testimony shows that the driver was engaged in helping the plaintiff’s granddaughter to alight from the bus when plaintiff fell, and the driver was prevented from being of help because the child was between the driver and Mrs. Alexander. We may add that we are not aware of any duty placed upon the driver to assist passengers in getting off a bus, especially where the passenger does not appear to have any physical infirmity. The bus was standing still and we are not aware of a legal duty to extend such a courtesy. The third allegation of negligence is that the defendant failed to provide adequate lighting in the bus. Again, we find this charge disproved. With reference to the charge that the bus step was defective, we think that the police officer, Dulaney, was in error when he testified that “it looked as though her foot caught on a stripping on the step”. After giving this testimony the witness later .changed it to say he thought Mrs. Alexander stumped her toe. Possibly, this change was brought about by the fact that there was no stripping on the step. It is relevant to observe in this connection that Mrs. Alexander testified she fell from the aisle forward into the vestibule and continued falling until she reached the ground level. If this statement is correct, Du-laney’s testimony is in error.
The final charge of negligence has to do with the presence of vomit on the floor, which plaintiff was of the opinion caused her shoes to be slippery and which condition contributed to her fall. Only plaintiff and her granddaughter said they saw the vomit on the floor. Dooley said his attention was called to the odor of it by Mrs. Alexander, but he did not recall any knowledge of the presence of vomit or it being wet or slippery. It is difficult to believe that such a wet condition of the floor could remain for twelve hours without becoming dry. Nor can we understand how such a condition could have escaped the observation of two complete cleanings of the bus and the intermittent steps of the bus driver into the interior of the bus.
We have concluded that Mrs. Alexander did not know what caused her to fall. The district judge, in his written reasons for judgment, observed: “It is not clear just what caused the plaintiff to suffer this fall.” We are of the opinion that defendant has exculpated itself from all of the charges of negligence made against it. It is not an insurer of its passengers.
For the foregoing reasons the judgment from which appealed is annulled, set aside and reversed, and it is now ordered that plaintiff’s demands be rejected at her cost.