BAILES, Judge.
This is an action in tort. Plaintiffs, husband and wife, seek to recover damages resulting from'a fall of the wife while she was a fare-paying passenger, on one of the *720 defendant’s buses. Plaintiff husband, Manuel Gaines, sues to recover alleged medical expenses, past and future, and plaintiff wife, Clara Gaines, sues to recover for alleged physical injuries, physical pain and suffering, mental pain and suffering, permanent disability, and loss of past and future wages. From a judgment in favor of the defendant rejecting their demands, the plaintiffs appeal.
Between 12 and 1 o’clock p.m., on Saturday, September 22, 1962, plaintiff, Clara Gaines, after shopping at a downtown store and burdening herself with an arm full of packages, boarded the Capitol Avenue bus on Third Street in the municipal block immediately south of Main Street. This bus, with a seating capacity of 41 persons, is of late model, powered by a diesel engine and equipped with automatic transmission. Plaintiff was the last of a number of passengers to board the bus. The traffic on Third Street was heavy at this hour. It appears from the testimony of the witnesses who were called to testify that immediately after plaintiff deposited her fare in the box provided for that purpose in the front of the bus and started down the aisle to select her seat, the bus pulled from the curb into the lane of moving traffic. After travelling between 75 and 100 feet, it was necessary for the bus to stop because of the traffic signal on Main Street. It appears that by the time the bus had moved this distance, plaintiff had walked down the aisle near or opposite the side exit door. At this point steps descend to the exit door, and there is what is commonly called a step well. The plaintiff lost her footing or balance and fell into the step well.
The bus driver was advised by some of the passengers that the plaintiff had fallen, and after he had driven the bus around the corner to the right on Main Street and as soon as a space was available at the curb he pulled the bus to the curb and stopped to investigate the occurrence. The bus driver obtained the name and address of the plaintiff and reported the incidence to his superior.
Without detailing the various allegations of negligence contained in the plaintiffs’ petition, we believe it sufficient to state that the basis of the plaintiffs’ claim is that the bus allegedly pulled away from the curb with a sudden jerk or jolt that caused plaintiff to lose her balance resulting in the fall.
The general rule that prevails in actions against public carriers, public conveyances or common carriers is that if a fare-paying passenger is injured while on a public conveyance the mere showing of injury establishes a prima facie case of negligence on the part of the common carrier, and the effect of this showing of injury is to impose the duty on the carrier of going forward with the evidence to show itself free from negligence.
This rule was stated by the Supreme Court of this State in Wise v. Prescott (1963), 244 La. 157, at page 165, 151 So.2d 356, at page 359, as follows:
“The mere showing of injury to a fare-paying passenger on a public conveyance and his failure to reach his destination safely establishes a prima facie case of negligence and imposes the burden on the carrier of convincingly overcoming such case. Adams v. Great American Indemnity Company, La.App., 116 So.2d 307; Johnson v. Continental Southern Lines, Inc., La.App., 113 So.2d 114, 74 A.L.R.2d 1328; Coleman v. Continental Southern Lines, Inc., La.App., 107 So.2d 69; Peters v. City of Monroe, La.App., 91 So.2d 428.
“A public carrier of passengers while not an insurer is required to exercise the highest degree of vigilance, care and precaution for the safety of those it undertakes to transport and is liable for the slightest negligence. Gross v. Teche Lines, Inc., 207 La. 354, 21 So.2d 378. The carrier must do all that human sagacity and foresight can do under the circumstances, in view of the character and mode of conveyance *721 adopted, to prevent injury to passengers, the carrier being held liable for the slightest negligence with reference to the exercise of such care. Mire v. Lafourche Parish School Board, La., 62 So.2d 541.”
The witnesses called by the plaintiffs support the defendant’s position that it was free of any negligence whatever. In fact, the plaintiff herself does not describe any action of the bus as it moved from the curb into the lane of moving traffic that could be construed as an unusual or sudden jerk or jolt. She testified as follows:
Record, p. 30, on direct examination:
“Q. When you fell did the bus jerk, or what ?
“A. Yes, sir;
“Q. Did it jerk on pulling to the left?
“A. When it pulled out.
Record, p-. 52, on cross-examination;
“Q. When you got on, did you put your fare in the box?
“A. Yes, sir.
"Q. Then what did you do ?
“A. Just as I put my fare in the box that’s the time he jerked off and I tried to brace myself.
“Q. You were at that time standing right by the fare box to the front of the bus?
“A. Yes, sir.
“Q. Did you fall right then?
p. 53:
“A. No, sir. You know how you stagger when something jerks like that.
“Q. All right, the bus started off just as you paid your fare. Then what happened?
“A. Then I tried to help myself from falling.
"Q. What do you mean, try to help yourself from falling?
“A. You know if you are falling you are going to hold on.
p. 54:
“Q. You never could hold on to anything ?
“A. No, sir.
“Q. You had all those packages in your hand?
“A. I had a free hand.
“Q. You had all the stuff in one hand and you had one free hand ?
“A. Yes, sir. I didn’t have but one loose package.”
Ethel Buckanan, in substance, testified on cross-examination that the bus made a usual start. (Record p. 76) Robert Butler testified that the bus made a regular type pull off from the curb. . (Record pp. 96-97) On cross-examination, Leslie Smith testified (Record, pp. 111-112) that the start from the curb wasn’t rough.
The defendant’s driver testified that the starting and stopping of the bus was normal. He described the difference between the starting of the bus with automatic transmission and the manually shifted bus. He stated that the start with the automatic transmission was slower, and it “just gradually goes off, it won’t jerk like the other one does” referring to the bus with the shift and clutch operated transmission.
While we find that there is nothing in the testimony of the witnesses to prove that there were jolts or jerks in getting the bus under way, let us assume, arguendo, that there were ordinary jolts and jerks accompanying the starting of the bus.
The law on this point is abundantly clear. In Murphy v. New Orleans Public Service, *722 Inc. (1936), La.App., 169 So. 890, on page 891, the court stated:
“[1] The law is well settled, and to the effect, that a carrier is not liable for the result of ordinary jolts or jerks incident to the starting or stopping' of its conveyances in the usual and customary manner.”
Also see: Hughes v. Baton Rouge Electric Co. (1939), La.App., 188 So. 473.
In Blashfield’s Sec. 2156, the rule is stated:
“The ordinary jolts and jerks of a bus in starting and stopping are among the usual incidents of travel, and for injuries resulting from them the carrier is not liable.”
In 13 C.J.S. Carriers § 750, p. 1410, the rule is stated as follows:
“It may constitute negligence that the train or car is so operated that, by jerking or jarring, passengers are imperiled who are properly cpnducting themselves with reference to their transportation, and the conveyance must be operated with regard to the situation of the passengers as known to, or as it should be known to, the employees in charge. Thus it may constitute negligence to stop a train or car with such suddenness and violence as to cause injury to a passenger, where there is no justification or excuse therefor. However, in order that the above rule may apply, the jerk or jolt must be unnecessary or unusually sudden or violent; such jerks and jars as are necessarily incident to the use of the conveyance, and are not the result of negligence, will not render the carrier liable for resulting injuries. * * *.”
In Hughes v. Baton Rouge Electric Company (1939), La.App., 188 So. 473, wherein the facts were quite similar to the instant case, on page 477, the court said:
“From the authorities cited it is apparent that in order for the operator of a motor bus to be held guilty of negligence in starting the bus, the movement must have been one that is unusual in the practical operation of starting a motor vehicle, and of a character accompanied with sufficient force or violence as to take the movement out of the ordinary jolts and jars incident to that method of travel and transportation. The mere fact that the bus is started before the passenger has reached his seat does not of itself, as we have seen, constitute negligence.”
Another point to consider is whether it is negligence on the part of the defendant’s driver to start the bus before a passenger reaches his seat. In the above quotation from the Hughes case, the court touched on this question. We find the following statement from Murphy v. New Orleans Public Service Inc., supra, is apropos.
“Passenger who enters bus or street car must contemplate its possible movement before he reaches his seat arid, in case of trolley bus, must contemplate lateral as well as forward movement, and maintain his equilibrium at his own risk against effect of movement of no unnecessary or unusual violence.”
Plaintiff contends that the driver of the bus was negligent in moving his bus from the curb before the plaintiff who was heavily laden with packages was safely seated. In oral argument, plaintiff’s counsel contended that this plaintiff was due the same care as is due the infirm, feeble or afflicted person because of the burden of packages that she carried. We do not find that the plaintiff was so burdened with packages. In her testimony quoted supra she stated that she had only one loose package and that she had a free hand.
When the plaintiff entered the bus she had one hand and arm completely free of burdens. It was with this hand that she dropped her fare into the box. It was with this hand that she could and should have steadied and balanced herself until she was *723 seated. If she felt unduly burdened with her packages, and her testimony belies such a condition, she could have requested the bus driver to permit her to seat herself before moving the bus from the curb. We do not find that this plaintiff should have been, under the facts, accorded special attention because of her packages.
For the foregoing reasons, the judgment appealed from is affirmed at plaintiffs’ costs.
Affirmed.