SARTAIN, Judge.
Plaintiff appeals from an adverse judgment in the District Court which rejected her claims for personal injuries and special damages that resulted from an injury she sustained while riding as a paying passenger on a bus operated by the defendant.
The facts in this case are undisputed. Plaintiff paid her fare and got on Bus No. 123 at or near the corner of 36th and North Streets in the City of Baton Rouge. She boarded this bus on November 6, 1962 at approximately 7:30 A.M. o’clock. The bus has a seating capacity for 41 persons. However, on the day the accident occurred it was a school day, and the bus had approximately 55 persons on it. This included approximately 25 adults and 30 school children. All persons above the number of 41 of course had to stand.
A diagram indicating the seating and stanchion lay out of the bus was placed in evidence. This chart indicates that immediately behind the driver are located two seats which face the aisle. Immediately behind these two seats are regular seats which face the front of the bus. The fare box is located at the front of the bus just to the right of the driver. Plaintiff boarded the bus, placed her fare in the box and proceeded towards the rear of the bus in an effort to locate a seat. Because of the standing patrons, it was necessary for her to “work her way through” these individuals. In so doing she tripped over a school bag which was located in the aisle between the first and second set of seats which faced the front of the bus.
As stated, there were many school children on the bus with various types of bags, *423 knapsacks, school book straps, etc. Plaintiff testified that she stumbled over a school bag which looked like a Boy Scout knapsack. She fell face forward to the floor. Her head came to rest near the third set of seats. She testified that she was able to get up and took a seat near the spot where she fell which was offered to her by its previous occupant. There is no question but that plaintiff sustained a severe injury that necessitated surgery.
The occurrence of plaintiff’s fall is not seriously disputed and the record amply supports the conclusion that she did in fact stumble over a student’s booksack and sustained the injuries complained of. The question for resolution is whether or not the defendant is guilty of negligence which contributed to or proximately caused the injuries sustained by defendant.
Plaintiff alleges in her petition that the defendant as a public carrier was obligated under the laws and jurisprudence of this state to deliver and transport her to her destination with the ittmost and highest degree of care, caution and attention. She further alleges negligence on the part of defendant’s agent-driver for failing to see that the aisle was clear of objects so that passengers could walk freely and in safety, in failing to instruct the school children having bundles and/or booksacks to keep them off of the aisle or passageway, in failing to give notice to petitioner that the walkway and passenger aisle of the bus was not safe; in allowing students riding the bus at the time to place their booksacks and other carrying cases in the aisle of the bus.
Defendant answered admitting that the defendant did on November 6, 1962 at about 7:00 A.M. o’clock board its bus as a paying passenger but specifically denies that its agent-driver was guilty of negligence contributing to the accident. The essence of defendant’s case is that the bus was heavily loaded primarily with school children on their way to school, most of whom had school books and supplies, some of them contained in satchels and sacks and other carrying devices, and that the books over which plaintiff stumbled were placed by a student passenger in the aisle and that the operator of the bus was not aware of the location nor had he known of its location nor did he have time to cause their removal; and, that the defendant is not liable because of unanticipated acts of the passengers out of the view and without the knowledge or control of the defendant’s bus driver. In the alternative, defendant opposed the plea of contributory negligence.
The case was tried on February 8, 1968 and for oral reasons assigned at the conclusion of the trial, the trial judge denied plaintiff’s claim. In finding for the defendant, the trial judge stated:
“* * * so it’s just a question of whether it was negligence on the bus driver’s part not to see those books. Of course, in this particular case he couldn’t see them for the people between him and the books, he couldn’t see them if he had been looking for them, unless he had gotten up and gone back there and looked. Unless he had some suspicion that they were there, there is no reason for him to stop his bus and go back there and look for them * *
The bus driver had been working for defendant for the past thirty-nine to forty years. He apparently had been on this particular run for some time and evidenced considerable pride in his job, the manner in which he drove his bus, and the knowledge and concern he had for his “passengers”. He very frankly and forthrightly stated that he knew school children who boarded his bus were known to place their books, booksacks and other items in or near the aisle and that he recognized that it was his responsibility to direct and supervise the children and to make every reasonable effort to see that the aisle was clear for passenger traffic. The driver stated that at the time plaintiff fell he could not observe the floor of the aisle *424 through the rear view mirror because of passengers standing between his position and the point where plaintiff fell. He did not know of plaintiffs fall until he had reached the corner of North Boulevard and Third Street, a distance of some forty-blocks from where plaintiff boarded his bus. When plaintiff disembarked she complained to him that she had fallen and hurt herself.
Under cross examination the plaintiff stated that there were a good many people on the bus when she got on and she had to “push her way through them to get back”. She stated that she had been riding this bus every day and that this was the first occasion that she had had to fall or see anyone else fall on the bus. As plaintiff began to make her way to the rear the bus had already pulled away from the curb. Plaintiff readily admitted that it was not the movement of the bus but the booksack which caused her to fall.
Henrietta Paul was called as a witness on behalf of plaintiff and testified that she boarded the same bus at 37th Street, one block before plaintiff. She stated that she also stumbled over the same booksack but was able to catch herself before she fell. This witness observed the same maneuver on the part of plaintiff and plaintiff’s subsequent fall. The witness stated that she was a regular rider of the bus and on many mornings saw the children on the bus and saw the booksacks out in the aisle. She also stated that she had never stumbled or tripped over any of the booksacks before that morning and had never seen anyone else fall or stumble over the book-sacks. She estimated that she had been riding the same bus for about five years and that this was the first morning that she had ever seen anyone fall over a book-sack. She stated under cross examination that the driver could not see the books on the floor because the passengers standing behind the bus driver blocked the latter’s view of the aisle to his rear. She stated that “there wasn’t anyway in the world you could see those books before you got to them. If there was, she wouldn’t have stumbled over them.”
Plaintiff’s counsel urged in the trial court and in brief and oral argument before this court the well established rule of law that a public carrier owes the highest degree of care to its passengers and bears the burden of proof of exculpating itself from any negligence of commission or omission however slight which causes injury to a passenger. The many cases cited by plaintiff in support of this and related rules governing the conduct required of public carriers are inapposite to and not controlling of the issue now before us.
The facts of this case clearly fall within the purview of Jones v. Baton Rouge Electric Company, 192 So. 539 (La.App.1939); Sewell v. Gulf C. & S. F. Ry. Co., La.App., 11 So.2d 923; Alexander v. Continental Southern Lines, Inc., 130 So.2d 539 (La.App.1961). These cases indicate a very marked distinction between the cases cited by plaintiff. For all of the authorities cited by plaintiff are cases where a passenger is injured by the operation of a public carrier and are not cases dealing with foreign substances in the aisle.
In Jones v. Baton Rouge Electric Company, supra, plaintiff alleged that she had slipped on a banana peel in the aisle as she attempted to disembark. The bus had been thoroughly cleaned the night before and there was no evidence as to how the banana peel got on the floor. In finding for the defendant the court declared:
“ ‘While the carrier’s employees have a duty to remove objects from the aisles and platforms of the vehicles when they have notice thereof, the carrier is not liable for injuries occurring where a passenger slips on a foreign object, such as a banana peeling, etc. or trips over an object in the aisle of the car, such as a hassock or piece of baggage, etc., unless its employees placed it there or had an opportunity to notice the presence of such object and remove it.’ ”
*425 “And, as was said by this court in the recent case of Hughes v. Baton Rouge Electric Company, La.App., 188 So. 473, where a passenger is injured by the operation of a bus, the burden is thrown on the bus company to show that it was free from negligence in the operation of its bus, although it is not required to show how the accident occurred or whose fault brought it about.
“However, the rule is different where the injury results from some foreign substance placed in the aisle or on the floor of the conveyance by some third person, in which case the plaintiff must show that the foreign substance was placed there by an employee of the carrier, or that the employee knew, or by the exercise of proper care and diligence, should have known of the presence of such foreign substance and failed to remove it.” (Emphasis added)
In Alexander v. Continental Southern Lines, Inc., supra, in reiterating the distinction between the high degree of care required of an operator of a public carrier and the duty owed by the same operator with respect to foreign objects on the floor, the court said:
“Also recognized is the legal principle that where the alleged injury resulted from an object or foreign substance placed in the aisle or on the floor of the conveyance by some third person, it is incumbent upon the complainant to show the foreign substance was placed there by an employee of the carrier or that an employee knew or by exercise of reasonable care and diligence should have known of the presence of such foreign substance and failed to remove it. (citations omitted) Thus there is imposed upon a carrier’s employees a duty to remove foreign substances or objects from the aisle and platform of the vehicle when they have actual or constructive notice thereof.”
“A presumption of the carrier’s negligence does not arise simply from the presence of a foreign substance placed in the aisle or on the floor of the conveyance by some third person. In such instances a plaintiff must show the substance was placed there by an employee of the carrier or that an employee knew or by the exercise of reasonable care and diligence, should have known of the presence of such foreign substance and failed to remove it.”
But in rendering judgment for defendant the following reasons were given:
“The final charge of negligence has to do with the presence of vomit on the floor, which plaintiff was of the opinion caused her shoes to be slippery and which condition contributed to her fall. Only plaintiff and her granddaughter said they saw the vomit on the floor. Dooley said his attention was called to the odor of it by Mrs. Alexander, but he did not recall any knowledge of the presence of vomit or it being wet and slippery. It is difficult to believe that such a wet condition of the floor could remain for twelve hours without becoming dry. Nor can we understand how such a condition could have escaped the observation of two complete cleanings of the bus and the intermittent steps of the bus driver into the interior of the bus.
We have concluded that Mrs. Alexander did not know what caused her to fall. The district judge, in his written reasons for judgment, observed: ‘It is not clear just what caused the plaintiff to suffer this fall.’ We are of the opinion that defendant has exculpated itself from all of the charges of negligence made against it. It is not an insurer of its passengers.”
In Johnson v. Continental Southern Lines, Inc., 113 So.2d 113, 118 (La.App. *426 1959), the court found for the plaintiff but specifically noted:
“In view of the aforesaid principles, the question determinative of defendant’s liability is whether its driver knew or, by the exercise of reasonable care and due diligence, should have known of the presence of the Coca Cola bottle on the floor of the bus or in the aisle thereof and failed to remove it. That the driver had the opportunity to make its discovery by an appropriate inspection is fully established. When the bus stopped at the railroad crossing only two blocks distant from the Kinder bus station, the driver could have and should have made an inspection to determine the aisle or passageway was free of obstruction, particularly in view of the condition of the aisle, the newspaper therein, and the presence of the empty bottles to which his attention had been directed. From these facts and circumstances and from the fact of the driver’s attention having been directed thereto, as well as from his failure is not consistent with reasonable care and due diligence in view of his knowledge of the existence of bottles in the aisle and the possibility of others lying there. Without making an inspection he had no right under the circumstances to take for granted, or to assume, there were no other bottles on the floor or in the aisle. This is made more evident by the presence of the newspaper in the aisle. The circumstances heretofore detailed were such as to place the driver under a duty to investigate and make certain no danger to the passengers existed while alighting from the bus. His dereliction was most substantial and resulted in the injuries sustained by plaintiff.”
The record in this case clearly supports the conclusion that the operator of the bus not only did not know, but could not know, of the location of the offending booksack in this case as verified by the testimony of both plaintiff and Henrietta Paul. See also Schuh v. N. O. Public Service, Inc., 5 La.App. 57 (Orleans, 1926) 13 C.J.S. Carriers § 744C.
For the above and foregoing reasons, the judgment of the District Court is affirmed at appellant’s costs.
Affirmed.