HOOD, Judge.
Ruby B. Smith sues to recover damages for personal injuries sustained by her when she attempted to alight from a. funeral limousine. The defendants are Robert King, the Willis-Gertrude-Geddes Funeral Homes, Inc., and the latter’s insurer, Continental Insurance Company. The trial court rendered judgment in favor of plaintiff, and defendants have appealed. We reverse.
The principal issue presented, and we think the determining one, is whether the driver of the limousine was negligent.
The accident occurred on August 29,1977, shortly after plaintiff attended a funeral. Pursuant to arrangements made by relatives or friends of the decedent, a limousine owned by the defendant funeral home and being driven by its employee, Robert King, picked up plaintiff and three other women at plaintiff’s home in New Orleans, and transported them first to the funeral home, and then to the church where the services were held. When the above four passengers boarded that vehicle, three of them sat on the rear seat, and one sat on the front seat by the driver. Plaintiff sat on the left side of the rear seat.
After the services at the church were completed, the same four passengers re-boarded the limousine for the purpose of being transported from the church to the cemetery, and after they had seated themselves in it, two other persons, a Mrs. Jackson and a Mrs. Hensley, also were taken on as additional passengers. These two extra passengers sat on folding “jump seats,” located between the front seat and the rear seat of the vehicle. When the limousine left the church, Mrs. Jackson was seated on the left “jump seat” directly behind the driver, and plaintiff was seated on the left side of the rear seat, behind Mrs. Jackson. The latter was an elderly, heavy woman, who plaintiff did not know before she got into the limousine at the church.
When the driver and his six passengers arrived at the cemetery, Mrs. Jackson decided that she would not go to the grave site because it was raining, but that instead she would remain seated in the limousine. She continued to occupy the left jump seat as *754 the other parties got out of the vehicle, but she leaned forward in it to give them more room to move around her. Plaintiff got out of the vehicle by squeezing by the left side of Mrs. Jackson, and she exited through the left rear door of the vehicle. All of the other passengers also got out of the limousine at the cemetery, leaving Mrs. Jackson as the only remaining occupant.
After attending services at the cemetery, plaintiff and the other passengers returned to the limousine, and the driver opened the left rear door for plaintiff to reenter it. At that time, and in response to plaintiff’s request, defendant King asked Mrs. Jackson to move so that plaintiff could get into the rear seat of the vehicle. Mrs. Jackson refused to move, however, explaining that she didn’t move when plaintiff got out of the car when they reached the cemetery, and she felt that she didn’t have to move to let her get back in it. Plaintiff then entered the left door of the vehicle, “eased by” the left side of Mrs. Jackson and sat in the same seat she previously had occupied in the limousine.
The six passengers then were transported by the limousine from the cemetery to plaintiff’s home, where the original four passengers, including plaintiff, were to disembark. Mrs. Jackson and Mrs. Hensley did not plan to get out of the car there, but they were to be taken on to other places. The driver parked the limousine on the left side of the street, against the curb in front of plaintiff’s home, and he then opened the left rear door for those on the back seat to use in alighting from the vehicle. At about that time, the passenger who had been sitting on the front seat with the driver (Mrs. Berry) got out of the vehicle and suggested to all of the other occupants that Mrs. Hensley move from the right jump seat up to the front seat of the limousine, and that Mrs. Jackson move over into the right jump seat, so that it would be easier for plaintiff and the other passengers in the rear seat to get out of the vehicle. In response to that suggestion, Mrs. Hensley moved from the right jump seat to the front seat of the limousine, leaving the right jump seat vacant. Mrs. Jackson, however, refused to move from the left jump seat, as had been suggested by Mrs. Berry, but she did lean forward again to make more room for plaintiff and the other passengers on the back seat to get out. Plaintiff stated that Mrs. Jackson “just tilted over forward,” and we gather from the evidence that the latter not only leaned forward, but that she caused the jump seat itself to tilt forward slightly. Plaintiff Smith then attempted to squeeze by the left side of Mrs. Jackson in order to exit through the left rear door of the vehicle. While she was doing so, Mrs. Jackson either leaned back in her seat, or allowed the seat to “come back,” with the result that the seat struck plaintiff’s right leg and caused a fracture of the right tibia, just below the knee.
Immediately after plaintiff got out of the limousine, the passenger who had been sitting in the middle of the back seat followed her by squeezing by the left side of Mrs. Jackson, exiting through the left rear door, just as plaintiff had done. The passenger on the right side of the rear seat exited through the right rear door of the vehicle.
On those facts, the trial judge rendered judgment in favor of plaintiff and against all defendants for $11,640.00. Defendants have appealed, contending that the trial judge erred in apparently finding that the driver of the limousine was negligent.
Plaintiff contends that the limousine in which she was riding at the time of her injury was a common or public carrier, and that the driver of that vehicle did not exercise the high degree of care for the safety of his passengers which is required of such a carrier. She argues, in brief and orally, that King was negligent in the following respects: (1) In having made “no attempt at all to move Mrs. Jackson so that plaintiff could exit the vehicle safely;” (2) in having “opened the door for her on the left side of the vehicle, on every occasion that she exited the vehicle, and did nothing further to see that she got out safely on that side;” and (3) in having done nothing “to get the lady to move” after requests were made of him by plaintiff and Mrs. Berry to do something.
*755 The evidence shows that plaintiff either entered or exited from the limousine on eight different occasions, and that in each instance she went through the left rear door of that vehicle. No one occupied the left jump seat the first five times she undertook that maneuver. It was only on the last three such occasions that she had to “squeeze by” Mrs. Jackson to get into or out of the car. Although Mrs. Jackson did not move out of her seat on any of those three instances, she did lean forward each time to make it easier for plaintiff to go around her. Plaintiff got out of the limousine and she got back into it at the cemetery with no injury, and with no apparent danger of injury. The last time she got out of the vehicle, that being the instance when her injury was sustained, it appeared that Mrs. Jackson made an even greater effort than she had made before to convenience plaintiff by leaning forward and tilting the jump seat forward. Plaintiff unquestionably would have alighted from the limousine safely on that last occasion were it not for the fact that Mrs. Jackson suddenly and unexpectedly let the seat “come back” and strike plaintiff’s leg. The injury which plaintiff sustained, therefore, did not result from the failure of the driver to assist her in exiting, or in failing to compel Mrs. Jackson to move, or in opening the door on the left side of the vehicle. Instead, her injury resulted from the sudden, unexpected and unforseen action of Mrs. Jackson in allowing the jump seat to move back while plaintiff was getting out of the car.
We find no merit to plaintiff’s argument that the driver was at fault because he did not attempt to “move” Mrs. Jackson, and because he did nothing “to get the lady to move.” When plaintiff got out of the limousine at the cemetery nothing was said by anyone about Mrs. Jackson moving. That is understandable, because plaintiff did not subject herself to any apparent or conceivable danger or risk of injury by simply getting out of the ear through the door which was nearest to her. It is true that she discovered while doing so that it was not as easy for her to get out that way as it would have been if the jump seat had not been occupied, but we do not view her difficulty in exiting as an indication to her or to anyone else that there was or could be a danger or a risk of harm in getting out of the limousine under those circumstances.
The first time anyone suggested that Mrs. Jackson should move was when the parties were about to reenter the limousine after the grave site services. Plaintiff then asked defendant King to ask Mrs. Jackson to move, but she explained that her reason for doing so was that when they first arrived at the cemetery she had experienced some difficulty in getting out of the limousine. In response to plaintiff’s request, defendant King promptly asked Mrs. Jackson to move, but the latter refused to do so. King did not use physical force to compel that passenger to move, and we know of nothing else he could or should have done under those circumstances to make it easier for plaintiff to get in the car. In any event, plaintiff did reenter the vehicle safely at the cemetery.
When the limousine arrived at plaintiff’s home, the driver opened the left rear door so the passengers on the rear seat could exit from the vehicle. One of the other passengers, Mrs. Berry, suggested at that time that the person riding in the right jump seat should move up to the front so that Mrs. Jackson could slide over to her right, thus making it easier for plaintiff to get out. Mrs. Jackson refused to move, but she tilted her seat forward to give plaintiff more room. We do not believe that it became the duty of the driver, King, at that point to again ask Mrs. Jackson to move, and we find that he was not negligent in taking no further steps to compel her to leave the seat she was occupying.
Plaintiff argues that the driver was negligent in opening the door on the left side of the limousine each time plaintiff exited from it. In making that argument, plaintiff fails to observe that she sat on the left side of the back seat each time she entered that vehicle and that the left rear door was the one which was nearest and most convenient to her. The first two *756 times she exited from the limousine, at the funeral home and at the church, no one was occupying the jump seats and those seats were folded out of the way. The driver cannot be criticized fairly for opening the left rear door for her to use on each of those occasions. The third time she got out of the limousine was at the cemetery. The left rear door not only was nearest to her, but by using it she avoided the necessity of having to climb over passengers on her right or sliding across the back seat, and at that time she did not know that it would be difficult or inconvenient for her to squeeze by the occupant of the left jump seat. We find no fault on the part of the driver in opening the left rear door for her to use in exiting from the vehicle at that time. Finally, when the limousine arrived at plaintiff’s home it was parked on the left side of the street against the curb. The left rear door not only was the nearest exit for plaintiff to use, but it afforded her the opportunity of stepping out on the curb instead of in the street, away from passing traffic, at a point nearer to her front door, and it eliminated the necessity of her sliding to the other side of the vehicle and then walking around the limousine to get back on the curb. She had entered and exited through that door safely on two prior occasions while Mrs. Jackson occupied the jump seat, and it was the same exit which the passenger seated in the middle of the back seat chose to use when she got out of the limousine. We find no negligence on the part of-the driver in opening the left rear door for plaintiff to use on that occasion.
Our ultimate conclusion is that defendant King, the driver, was free from negligence or fault, and that neither he nor his employer is liable to plaintiff for the injury which she sustained as a result of the above accident.
Plaintiff contends, however, that the limousine in which she was riding was a “common carrier” or a “public carrier,” and that as such it was the duty of the driver “to exercise the highest degree of care to transport one’s passenger safely to his or her destination, and any infraction or dereliction of that duty, however slight, which has a causal connection with an accident renders that carrier and its operator liable for damages.”
We are aware of the established line of jurisprudence which holds that a common carrier or a public carrier of passengers is required to exercise the highest degree of vigilance, care and precaution for the safety of its passengers, and that it is liable for the slightest negligence which causes or contributes to an injury. Such carrier is not the insurer of its passengers’ safety, however, and it is not liable in damages for injury to a passenger unless the evidence establishes that the injury resulted from some negligence, although slight, on the part of the carrier. Wise v. Prescott, 244 La. 157, 151 So.2d 356 (1963); Higgins v. New Orleans Public Serv., Inc., 347 So.2d 944 (La.App. 4 Cir., 1977); Alexander v. Continental Southern Lines, Inc., 130 So.2d 539 (La.App. 2 Cir., 1961); Duplessis v. New Orleans Public Service, Inc., 354 So.2d 768 (La.App. 4 Cir., 1978); Green v. TACA International Airlines, 304 So.2d 357 (La.1974).
In Duplessis, supra, we held that the defendant, a public carrier, was liable because the bus driver “was negligent, and that such negligence was a proximate cause of the injury.” In Higgins, supra, we reversed the trial court and dismissed plaintiff’s suit against a common carrier, because we found no negligence on the part of the carrier, and no breach of duty on its part to protect the injured passengers. In Alexander, supra, the Second Circuit Court of Appeal reversed the trial court and rejected plaintiff’s demands against a common carrier of passengers, because it found no negligence on the part of the carrier. And, in Hood v. U.S.I.F. Wynnewood Corp., 377 So.2d 480 (La.App. 4 Cir., 1979), we held that the Metry Cab Company, a public carrier, and the cab driver were not liable in damages because the evidence established “neither negligence nor the omission of any act of care on the part of the Metry cab driver.”
*757 In the instant suit it is not necessary for us to determine whether the limousine which transported plaintiff Smith was a common carrier, a public carrier, a privately owned automobile, or any other class or type of vehicle, because we have concluded that the driver of that vehicle was not negligent, even slightly, in any respect whatsoever. Even if the limousine should be considered to be a common or public carrier, therefore, and if we should assume that the burden of proof shifted to defendants to prove that the driver was free from negligence, the evidence establishes that the driver was not negligent. Defendants thus are not liable in damages for the injuries which plaintiff sustained. We think the trial court erred in holding that plaintiff is entitled to recover.
We emphasize the fact that we are making no determination at all as to whether the limousine involved here was a common carrier, a public carrier, or a privately owned vehicle. Our holding with respect to that issue is simply that it is immaterial to the outcome of this case as to how the vehicle should or might be classified. There is no liability on the part of defendants even if the high standard of care required of common or public carriers should be applied.
The judgment appealed from is reversed, and judgment is hereby rendered in favor of defendants and against plaintiff, dismissing plaintiff’s suit at her costs. The costs of this appeal are assessed to plaintiff-ap-pellee.

REVERSED.

GARRISON, J., dissents with written reasons.
SCHOTT, J., dissents and assigns reasons.